# COUNTY OF CUMBERLAND.

## STATE *versus* LEIGHTON.

The penal provision of statute of 1850, c. 159, art. 10, § 13, for the protection of schools, is applicable to private schools regularly established and in operation for instructing in the art of writing.

ON EXCEPTIONS from *Nisi Prius*, SHEPLEY, C. J., presiding.

COMPLAINT before a municipal court. The case came to this Court by appeal. The complaint charged that the defendant willfully disturbed a private school, kept in a district school-

house, by one Lambert, for instructing in the art of writing. The evidence tended to prove that such a school was kept in the school-house of the district of which the defendant was a resident, and that the defendant willfully disturbed that school, in the manner forbidden by the statute of 1850, c. 193, art. 10, § 13.

The jury were instructed, that the provisions of that section were applicable to a private school for instruction in writing, regularly organized and established and in actual operation, and the defendant excepted.

*S. Fessenden,* for the defendant.

1st. The writing school was not a school within the meaning of the statute. It was not a town or public school, set up in the regularly constituted limits of the district as established by the town.

2d. It was not set up in behalf of the district by the school district agent, nor could such a school be so set up and supported out of the money apportioned to the district by the town.

3d. The teacher was not subject to any examination before the superintending school committee; had no such certificate from the superintending school committee of the town, as the statute requires teachers to obtain as to capacity and morals, in order to keep such a school as this statute contemplates and protects. The school was not under their supervision or control, as is required in relation to schools established under the statute. The committee were not bound by law to visit such school, or select for it any books or make any return or report of it; the teacher was in no manner answerable to the committee, could not be dismissed by them for misconduct or incompetency, nor could any of his scholars be expelled by them; he was not subject to any of the forfeitures, mentioned in the statute. A private writing school, set up by the mere authority of the teacher himself, is not among the schools and institutions of learning enumerated, authorized or protected by this statute.

The statute enumerates all the schools, which it was de-

signed to protect.   The phrase " other place of instruction,"
only means a building or  place, other than  a school-house, in
which a public school  may  sometimes be kept.

4th.  The agent  could  not  lawfully let or  hire the school-
house to  Lambert, in  which  to  set  up  this  writing school.
Lambert was not  rightfully  or lawfully there ;  he  was not an
inhabitant of  the district,  was a  mere  trespasser  upon  pro-
perty  which  belonged  to the  defendant in common with the
rest of  the inhabitants.

5th.  If this  statute  protects  this  writing  school,  it must
equally protect dancing schools, caucuses, puppet shows, danc-
ing bears,  or any exhibitions,  however  vile,  which  the veri-
est traveling imposter may set up.

6th.  There is no need  of a construction, which should en-
fold this vagrant writing master within its embrace.   It ought
to be  satisfactory to him that the other laws of the State give
to  his  business all  the protection,  afforded  to  farmers, mer-
chants and mechanics of  the  land  in their  respective depart-
ments of  business.

*Deane, County Attorney*, for the State.

HOWARD, J. — By  the  Act  of  1850,  c.  193, " to  provide
for the education of youth,"  art. 12, § 1,  the seventeenth
chapter of the R. S. and  other statutes upon  the  subject of
education, were repealed.   By that Act the  general  duties of
towns,  the  formation, powers  and  obligations of  school  dis-
tricts,  the duties and authority of  superintending school com-
mittees, and school  agents, and  the  duties and  qualifications
of instructers, including those of  the  " presidents, professors
and tutors of  colleges, and  of  the  preceptors and  teachers of
academies, and all other  instructers of  youth, whether in pub-
lic or private institutions,"  are  prescribed and  enjoined, in
general, but comprehensive terms.   The  whole subject of
education, public  and  private,  primary and  liberal,  seems
to have been before the Legislature, at  the  passage of that
Act, and to have been regarded in the most  particular, as well
as in a more  enlarged acceptation.   By art. 10, § 13, of the

same Act, a penalty is provided for the willful interruption or disturbance, by any person, of *any teacher or pupils, in any school* kept in " *any school-house or other place of instruction.*" This provision appears to have been intended to secure the privileges of imparting and receiving education to all, without distinction or interruption.

A private school for instruction in writing embraces a branch of education usually taught in public schools, and recognized by law, and is clearly within the purview and protection of the statute to which reference has been made. The argument which excludes such schools from such protection, will also exclude colleges, academies, private schools of all descriptions, and institutions of instruction of every sort, with the exception of town or district schools. But the terms of the Act will embrace all schools for instruction, contributing to education in an enlarged signification, and we do not perceive any reason or authority for restricting the operation of the statute to a single class of schools. The language of the Act, the object in view, and the propriety and reason of the thing, all tend to the same conclusion.

*Exceptions overruled.*

TENNEY, WELLS and APPLETON, J. J., concurred.