SETH PRATT vs. THE BOROUGH OF LITCHFIELD.

Hartford Dist., May T., 1892. ANDREWS, C. J., CARPENTER, SEYMOUR, TORRANCE and J. M. HALL, Js.

The charter of the borough of Litchfield provides that the burgesses may pass by-laws or ordinances pursuant to the powers given them by the charter; and that "the Superior Court may, on due notice to the burgesses, and on hearing, repeal any by-laws which it shall deem unreasonable or contrary to the laws or constitution of this state or of the United States." Held that the power conferred upon the court was only to repeal, and not to amend or modify in any way, a by-law passed by the burgesses.

And held that a by-law which under the charter the burgesses had no power to make, was a by-law contrary to the laws of the state within the meaning of the charter.

One section of the charter gave the burgesses power to organize a fire department and regulate the mode in which buildings should be secured against fire, to prevent the use of buildings for any purpose which might expose the borough to damage from fire, and to appoint inspectors to see that the ordinances for protection against fire were complied with. And a later section gave the burgesses certain specified powers, among which was that of preventing regulating the use of any building for any purpose that should increase the danger from fire, and closed as follows:—"and in general to provide adequate protection against fire and pass suitable police and health regulations." Held that no power was conferred upon the burgesses by either of these sections of the charter, to establish fire limits within the borough, and to require that all new buildings or extension of buildings within them should be constructed of brick, stone, iron or concrete, upon plans approved by the burgesses.

Restrictions on the building or repairing of wooden structures in a city are invasions of private rights and are to be strictly confined to their literal import.

[Argued May 3d—decided June 30th, 1892.]

SUIT for the repeal of certain by-laws passed by the burgesses of the defendant borough; brought to the Superior Court in Litchfield County, and heard before *Prentice, J.* Facts found and a decree passed striking out certain parts of one of the by-laws and finding the issue in other respects for the defendant. Appeal by the plaintiff. The case is fully stated in the opinion.

*J. T. Hubbard* and *W. S. Judd*, for the appellant.

*G. A. Hickox* and *A. D. Warner*, for the appellee.

TORRANCE, J.   The charter of the borough of Litchfield provides that the burgesses thereof may pass by-laws or ordinances pursuant to the powers given them in the charter. It also provides that " the Superior Court for the county of Litchfield may, on due notice to said burgesses, and hearing, repeal any by-laws which it shall deem unreasonable or contrary to the laws or constitution of this state or of the United States."

This is a proceeding brought under the provision of the charter just recited for the repeal of two certain by-laws passed by the burgesses of the borough.   The first of the by-laws complained of reads as follows :—" Be it and it is hereby ordained that no building shall be erected within the limits of the borough of Litchfield, except upon such plans as shall have been submitted to and approved by the board of burgesses of said borough ; and be it further ordained that the penalty for each and every violation of this ordinance shall be fifty dollars."

This was passed in 1886, and will be hereafter referred to as the by-law of that year.   The other by-law complained of fixed certain " fire limits " so called in the borough, within which part of the borough it was ordained " that no wood or frame building shall be erected in or moved upon it ; " but that " all new buildings or extensions of buildings therein shall be constructed of brick, stone, iron or concrete, with fire-proof roof, upon plans to be approved of by the burgesses."   This by-law took effect on the 23d day of April, 1891, and will be hereafter referred to as the by-law of that year.

Section three of the last mentioned by-law reads as follows :—" In case any building shall be erected, extended or moved within said limits, in violation of the provisions of this ordinance, after notice as provided in the second section hereof, any person who shall maintain or occupy said

building or extension of any building within said limits shall be fined fifty dollars for each and every month during which he shall continue such maintenance or occupation."

The plaintiff claimed the repeal of the by-law of 1886 on the ground that it was unreasonable. He claimed the repeal of the by-law of 1891 for one reason, among others not necessary to be stated here, that the burgesses had no power under the charter to pass the by-law. In his complaint the plaintiff also asked that the warden and burgesses be enjoined from interfering with or hindering him in the completion of a certain building of his, but as the right to any relief save by way of repeal of the by-laws was waived by the plaintiff on the trial, and this was the only relief the court attempted to give, we may regard the complaint simply as one for such relief only.

Before coming to the questions raised directly upon the record, it will be well to consider for a moment just what powers are given to the Superior Court under the borough charter with reference to the repeal of by-laws or ordinances passed by the burgesses. The power thus given to the Superior Court is manifestly a special and limited power. It is the power to *repeal* a by-law, not the power to amend it, or modify or alter it in any way. It includes the power to revoke, abrogate, set aside and annul, in a given case, what the burgesses have done, but not the power to amend, modify or change what they have done by striking out particular words, or adding them, or otherwise changing the by-law. If the court can do this last it will be difficult to set limits to its power. A by-law goes into effect when certified and published as required by the charter. Having gone into effect, it cannot be essentially changed or modified, either by the burgesses or by the court, without making it in effect a new and different by-law. As such it cannot go into effect until again certified and published as required by the charter. In this respect therefore we think the charter should be construed somewhat strictly against the extension of the power so given to the Superior Court.

But in another aspect the provision of the charter giving

this power of repeal to the Superior Court is a remedial and beneficial one. It furnishes, and was we think plainly intended to furnish, a simple, direct, expeditious, and comparatively inexpensive method of testing and determining the legal validity of a by-law. The legal validity of a by-law of this borough might be questioned on the ground that its provisions are contrary to some specific law or laws of this state, or on the ground that the burgesses had no power to make it under the charter. Is a by-law of this latter class contrary to the laws of this state within the meaning of the charter? We think it is.

Such a by-law is clearly of no legal validity, although it might be difficult strictly speaking to say that its provisions were contrary to any specific law or laws of this state. In an important sense, however, such a by-law would be contrary to the laws of this state inasmuch as its provisions, which of necessity attempt to restrict individual freedom, are unwarranted by law. It is in this last and wider meaning that we are inclined to think the words " contrary to the laws of this state " are used in the section of the charter which we are now considering. Within the meaning of that section a by-law is contrary to the laws of this state, either when its provisions are contrary to some specific law or laws, or when the by-law is one which the charter gives the burgesses no power to make.

We therefore think that under this grant of power to the Superior Court it may repeal a by-law which the burgesses had no power to pass under the charter, as well as one whose provisions are contrary to some specific law or laws of this state.

Passing now to the questions directly raised upon the record, we deem it necessary to consider only one of them specially, and that is the one contained in the first reason of appeal.

It clearly appears from the record that one of the claims insisted upon by the plaintiff in the court below was that the burgesses had no power to pass the by-law of 1891. This claim was made in the seventeenth paragraph of the

substituted complaint, which was demurred to and the demurrer sustained on the ground that the charter did confer such power, and this is assigned for error in the first reason of appeal.

The question then is, whether the burgesses under the charter had the power to pass the by-law of 1891. From the charter itself it is quite evident that the power in question must be sought for, and must be found, if it exists at all, in the seventeenth, twentieth and twenty-first sections of the charter. The twenty-first section may be laid out of consideration, for it simply gives the power to pass by-laws or ordinances in pursuance of the powers given elsewhere in the charter; so that this power must be conferred, if at all, by the seventeenth and twentieth sections, singly or combined. These sections read as follows:—

" Sec. 17. The burgesses shall have power to appoint fire wardens, to organize a fire department, and to purchase fire engines, fire hooks, ladders and other proper machines and implements for extinguishing or preventing the spread of fire. They may appoint officers of such department, and regulate the mode in which buildings shall be secured against fire, and may regulate or forbid the keeping and use of dangerous and explosive substances of all kinds; may regulate the erection and use of steam-boilers, and may regulate or prevent the use of buildings for bakeries, tallow-chandlers' business, or blacksmithing, or any other business which may expose the borough to danger from fire; may construct and maintain hydrants, reservoirs, pumps, cisterns and wells; and may appoint inspectors who shall be empowered to enter all buildings, premises and dwellings in the borough to see whether the by-laws and ordinances of the burgesses for protection against fire have been complied with."

" Sec. 20. The burgesses are empowered to prohibit, restrain, license or regulate all sports, exhibitions, public amusements, and billiard and bowling rooms, within the borough; to provide places for holding borough meetings; to take bonds of borough officers; to provide for the meas-

Pratt v. Borough of Litchfield.

urement and inspection of wood, coal and produce brought in for sale ; to prohibit tumultuous and disorderly disturbances and noises ; to regulate the compensation of borough officers, provided that no burgess shall receive any salary or pay for service as such burgess ; to license and regulate peddling and public auctions ; to prevent or regulate the use of any premises or building for the purpose of carrying on any trade, business or manufacture which in their opinion shall be prejudicial to the public health, increase the danger from fire, or cause unreasonable annoyance to those living or owning property in the vicinity ; and to prescribe the hours within which saloons and other places in which spirituous and intoxicating liquors are sold or reputed to be sold may be kept open ; to prevent cruelty to animals ; to inspect all produce or articles of food or drink offered for sale ; and, in general, to provide adequate protection against fire, and to pass suitable police and health regulations in said borough."

From an inspection of these sections it is quite clear that the power in question is not in express terms given in either of them. It is equally clear we think that it is not conferred by fair implication in section seventeen. The provisions of that section extend to the whole borough and not to any special portion of it. It provides in detail for a fire department, for apparatus, appliances and means of all kinds for extinguishing fires, including a supply of water for that purpose, and for certain specified means and methods for preventing the occurrence of fires. It is plain that the main object of the section is to prevent as far as possible the occurrence of fires in the buildings of the borough then or thereafter to be erected, and to provide means and methods and appliances for extinguishing such fires. It contains no hint of a power to forbid the erection of wooden buildings or to cause their removal in order to prevent as far as possible the occurrence of fires. And the specific powers therein given for this latter purpose exclude the idea that other powers not so specified were intended to be given. In short there is nothing in section seventeen that

can fairly be construed as conferring upon the burgesses the power to pass the by-law of 1891. Indeed on the argument it was hardly, if at all, claimed that it could be so construed.

The main contention on the part of the borough was, that the power was conferred by section twenty in the words " the burgesses are empowered * * * to provide adequate protection against fire."

Quite a number of authorities are cited upon the brief in behalf of the borough, to show that words of the same or nearly similar import as the words above quoted have been held to confer the power to pass an ordinance or by-law like the one here in question. We have no occasion to dissent from or criticise the authorities thus cited.

The question now is one of construction, and in the solution of such a question so much depends upon circumstances special to each particular case in hand, that decided cases are seldom of much assistance directly, although they may be quite valuable as hints and guides in correctly applying rules of construction or as containing correct statements of those rules. Perhaps it may not be out of place here to advert to one or two of the general rules of construction applicable to the present case.

In the first place, a municipal corporation can exercise no power which is not in express terms or by fair implication conferred upon it. *Thomson* v. *Lee County*, 3 Wall., 327 ; *Minturn* v. *Larue*, 23 How., 435 ; *Willard* v. *Borough of Killingworth*, 8 Conn., 247 ; *City of Bridgeport* v. *Housatonic R. R. Co.*, 15 id., 475.

In the next place, any doubt or ambiguity arising out of the terms used by the legislature must be resolved in favor of the public. *Minturn* v. *Larue, supra ;* Sutherland on Stat. Construction, § 380, and cases cited in foot note.

Restrictions on the building or repairing of wooden structures in the populous part of a city, commonly designated as fire limits, are invasions of private right and are to be strictly confined to their literal import. Sutherland on Stat. Construction, § 367 ; *Booth* v. *The State*, 4 Conn., 65.

Lastly, the words of the charter from which it is claimed

the power in question is granted must be construed in connection with the entire charter, and in view of the general legislation in our state in matters of this kind. So far as we are aware general language like that here in question has never, by the profession or by the legislature, been deemed sufficient to confer authority to establish fire limits. So far as we know in this state, the right to establish fire limits has been exercised only in cases where such power has been expressly conferred. This of course ought not to control in a question of construction, but in ascertaining the legislative intent in a given case it is entitled to some consideration.

Coming now to the more particular consideration of the clause in question, we observe that even if it stood alone in a section by itself, to construe it as conferring power to establish fire limits would be a very forced construction. It would be opposed to the fair, natural meaning of the words employed. They naturally import just what the burgesses are empowered to do in section seventeen. If this clause is to be construed as the borough claims, then section seventeen is entirely superfluous and unnecessary, for under it the burgesses can do all that section seventeen empowers them to do and very much more.

Again, when the power to establish fire limits has been expressly granted by the legislature, it has been customary in the charter to set some limits to the exercise of such an important power ; but if in the case at bar these general words confer such a power, it is given practically without limits, save the discretion of the burgesses, tempered perhaps to some slight extent by the power of repeal vested in the Superior Court. Under such a construction the burgesses could not only prohibit the erection of wooden buildings within any part of the borough, but they could cause any such buildings erected long before the passage of the by-law to be destroyed or removed, perhaps at the expense of the borough, if in their judgment adequate protection against fire demanded their destruction or removal. Indeed it is difficult to see why they might not prohibit absolutely the

erection of any kind of a building in some parts of the fire limits for the same reason. A construction that leads to such consequences is not to be adopted if any more reasonable one is possible.

We think it quite clear that a more reasonable construction can be and should be given to these words. They do not stand alone in a section by themselves. They are to be read and understood in connection with the other parts of the charter which empower the burgesses to deal with the occurrence of fires. In section seventeen the legislature had dealt very fully and in detail with this matter. It had in that section, in express words and very clearly, given to the burgesses such power in this respect as it saw fit to confer. It had also in other sections conferred on them very fully the power to deal with garbage, filth and all matters injurious to health. In section twenty quite a number of minor matters are provided for, and at the end, as a sort of omnibus clause, come the words "and in general to provide adequate protection against fire and to pass suitable police and health regulations in said borough." We think this clause, "to provide adequate protection against fire," is to be read as if it stood at the end of section seventeen. When thus read it cannot fairly be regarded as an additional and further grant of power not already given in the section, but as an amplification or enlargement if necessary of the specific powers therein given. The generality of the words is thus restrained by what precedes them. Such a construction brings this clause into harmony with the other parts of the charter, gives it all the force to which it is fairly entitled, and avoids the consequences to which reference has already been made.

For these reasons we think the burgesses had no power to pass the by-law of 1891, and that the court below ought to have so held, and to have overruled the demurrer.

Furthermore, on the principles already laid down, the judgment below is erroneous in another respect. The court below found the third section of the by-law of 1891 to be unreasonable because it was made applicable even to those

who might only occupy a building erected contrary to the provisions of the by-law. The court thereupon, instead of repealing the by-law or the section, in effect amended it by striking out the words "occupy" and "occupation." This was in effect making a new section, not repealing the old one complained of. This point is not assigned for error, but under the circumstances we think we are at liberty to notice it and ought to do so.

In view. of what has been here said it is unnecessary to notice the other points assigned for error.

The judgment of the court below is erroneous and it is reversed.

In this opinion the other judges concurred.