**BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF CLEVELAND v FERGUSON**

Ohio Appeals, 2nd Dist, Franklin Co

No 3214. Decided May 15, 1941

Harry S. Brainard, Cleveland, and Charles W. White, Asst. Director of Law, Cleveland, for plaintiff-appellee.

Thomas J. Herbert, Attorney General, Columbus; Charles F. Ohl, Asst. Attorney General, Columbus, for defendant-appellant.

## OPINION

BY THE COURT:

This is an appeal on questions of law from a declaratory judgment in favor of plaintiff-appellee. The question presented is one of law as applied to the facts pleaded in the petition and admitted in the answer. It is whether the plaintiff-appellee, which we hereinafter refer to as the Board, in connection with the operation of open air classes for pupils who are found to be susceptible to tuberculosis, has the authority under the school laws of the State of Ohio to furnish and maintain standard and uniform sleeping garments for the use, when needed, of such pupils while in attendance upon such classes and to have them cleaned at reasonable intervals, to provide lunches to members of such classes without charge and to employ necessary personnel to prepare and serve such lunches within the elementary school buildings, and, further—whether the plaintiff board has the power under the law to provide lunches without cost, as its cafeterias in its junior and senior high schools to pupils in attendance therein whose parents, upon investiga-

tion, are found to be unable to pay for the lunches.

Many of the particulars under which the open air classes have been established and operated in the city of Cleveland and the cost thereof appear in the petition and the cost of serving free lunches to pupils in the junior and senior high schools, whose parents are unable to pay for their meals, is set up as $66,021.50 during the school year of 1938-1939. It appears that there were 4,314 pupils, approximately 7 per cent of the total number of pupils in the aforesaid schools, served under this latter plan in the year 1938-1939.

The Bill of Rights, Art. I, ¶7 of the Ohio Constitution enjoins upon the citizens the obligation to encourage schools and the means of instruction. Article VI in its entirety is devoted to the subject of education but no provision in the constitution respecting schools is self-executing and the authority and power of school boards is determined solely and exclusively from the acts of the General Assembly.

State ex Clarke v Cook, 103 Oh St 465, states the rule that: "Boards of Education, and other similar governmental bodies are limited in the exercise of their powers to such as are clearly and distinctly granted. State er Locher, Prosecuting Attorney v Menning, 95 Oh St 97, approved and followed."

The authority of boards of education is derived solely from the statutes, both duties and authority being clearly defined by legislation and is limited strictly to such powers as are expressly granted or clearly implied. 36 O. Jur. 188, 189; Hudson v Board of Education, 41 Oh Ap 402, Perkins v Bright, 109 Oh St 14, Board of Education v Volk, 72 Oh St 469. Reed v Muhlenberg Township Board of Education, 6 O. N. P. (N.S.) 526, Board of Education v Best, 52 Oh St 138, Board of Education v Brown, 81 Oh St 528, Board of Education v Griffith, 74 Oh St 80.

The principal section under which the plaintiff claims the authority which it seeks to have this court declare it possesses is §7620 GC, which provides that:

"The board of education of any district may build, enlarge, repair and furnish the necessary schoolhouses, purchase or lease sites therefor, or rights of way thereto, or purchase or lease real estate to be used as playgrounds for children or rent suitable schoolrooms, either within or without the district and provide the necessary apparatus and make all other necessary provisions for the schools under its control. It also shall provide fuel for. schools, build and keep in good repair fences enclosing such school houses, when deemed desirable plant shade and ornamental trees on the school grounds, and make all other provisions necessary for the convenience and prosperity of the schools within the subdistricts."

If the board has the authority which it claims, it must be found in that part of the statute which we have emphasized. If the language, so stressed, is given its widest general application it would be broad enough in terms to support the claim of the board. However, the language which we have emphasized must be read in the light of the rule of ejusdem generis which is to the effect that in the construction of laws, general conditions following an enumeration of specific things are usually restricted to things of the same kind as those specifically enumerated. The section, 7620 GC, is directed to the physical properties constituting schools and not to those persons who attend or the pupils. School is a place where instruction is imparted to the young, an institution for learning, an eductional establishment, a place for acquiring knowledge and mental training, although we recognize that in instances it may include the institution and the teachers and the pupils. Smith v Donahue, 195 N. Y. S. 715. If we break down the section it appears that it relates to the building, the enlarging, the repairing, the furnishing of the neces-

sary schoolhouses, the leasing of real estate to be used as playgrounds for children and the rental of suitable schoolrooms for the pupils and in the furtherance of these specific authorizations to provide necessary apparatus and **make all other necessary provisions for the schools under its control.** This section is not broad enough in the general language which we have quoted to authorize the board to provide special care, attention and treatment for those pupils who are diseased or are susceptible to disease.

The conclusion that the quoted section does not clothe boards of education with the power to afford specialized health treatment is strengthened by the fact that there are so many specific sections authorizing the establishment of schools and special attention for certain afflicted or diseased pupils. If the general language of §7620 GC can be given the broad application insisted upon by the board then all of the special legislation to which we hereinafter refer would be unnecessary. The fact that the legislature has deemed it appropriate to enact such legislation and grant authority by specific provision is convincing that it was not intended that the general terms of the language employed in §7620 GC was meant to grant the power contended for. Some of the specific legislation to which we refer is found in the following sections.

**Sec. 7644-1 GC** provides that the board of education may establish special elementary schools for youth afflicted with tuberculosis, cause their exclusion from the regular school and pay for their transportation to the special schools. Of course, there is a distinction between the pupils here specially under consideration who merely have a susceptibility to tuberculosis and those who are afflicted therewith but it is probable that the treatement, in the main, for both classes of pupils would be the same.

**Sec. 1885-1 GC** provides that the director of education may provide for further and higher education for certain blind pupils and **§7755 GC** author-izes the director of education to grant permission to any local board of education to establish and maintain a class or classes for the instruction of deaf or blind persons over the age of 3 and crippled persons over the age of 5 and **§7755-4 GC** provides for the teaching of crippled children in their home, if unable to attend school with the aid of transportation.

Authority to purchase sleeping garments for the pupils in the outdoor schools is found, if at all, in that part of §7620 GC which authorizes the board to provide the necessary apparatus for the schools under its control.

There are several decisions in Ohio defining apparatus as used in this section and prior analogous sections, **State ex Dunn v Freed, Treasurer et, 10 O. C. C. 294,** wherein the court held that certain blocks intended for demonstration for lessons in arithmetic came within the meaning of the term "apparatus" as employed in the section under consideration which was 3995 R. S. The court defining the term said that, "It is a special apparatus or appliance, and must be either philosophical or for the demonstration of branches of education taught in the district." The other case is **State ex Prosecuting Attorney v Treasurer of German Township, 2 O. C. C. 363.** It was there held that school and reading charts for use in schools of the districts under consideration was apparatus for the demonstration of branches of education as employed in §3995 R. S.

In **Bank v Board of Education, 15 O. C. C. R. 561,** the court had under consideration the question whether or not certain geographical cabinets could be furnished by a board of education for schoolhouses within districts under its control. The court held that the cabinets could be classified as apparatus but that they were not special apparatus for the demonstration of a special branch of education and, therefore, did not come within §3995 R. S. which required that it not only be apparatus but that it be a "philosophical or other apparatus for the demonstra-

tion" of some branch of education taught in a district school.

Webster defines apparatus as follows: A collection or set of materials, implements or utensils for a given work experimental or operative. Sleeping garments might in one view of the use to which they are applied be said to be a collection or set of materials for a given experimental or operative work but when the word "apparatus" is read in conjunction with all of §7620 GC, it is our judgment that it is not broad enough to include the special sleeping garments.

The right of the board to provide special meals without cost to all the outdoor students and meals at the cafeterias in the elementary schools for pupils whose parents, upon investigation, are found to be unable to pay for their meals, presents, in our judgment, the same question.

Before the enactment of §4762-1 GC the Court of Appeals of Cuyahoga County in **Hauschild v Board of Education of Lakewood et, 2 Abs 377,** held that the board had no power to establish lunch rooms and cafeterias in public schools, although, at that time (1924) the general power of the board was practically the same as now granted under §7620 GC. It follows that the power of the board and the extent thereof, to furnish free meals to pupils must be found in §4762-1 GC or other related sections of the code.

**Sec. 4762-1 GC** provides:

"The board of education of any school district may provide facilities in the schools under its control for the preparation and serving of lunches to the pupils, the teachers, and to other employees therein, and may provide the management of such lunch rooms, which shall not be operated for profit; provided that the privileges and facilities granted hereunder by any board of education shall apply to all pupils and teachers, and no restrictions or limitations shall operate against any such pupil or teacher in the use of such facilities except for reasons applicable to all alike."

We find no authority, in that part of the statute which we have quoted, for the board to provide meals ██ without cost either for the outdoor pupils or for those whose parents are unable to pay.

It is the theory of the statute that the cafeterias shall be self-sustaining but not operated for profit. If a group of junior and senior high school pupils 7 per cent of the total and all of the outdoor classes in the elementary grades may be fed free of charge then the privileges and facilities of the cafeteria are not granted alike to all pupils. If pupils are to be given meals without charge to their parents, then to follow the purpose of the section, would require that the legislature make some provision for carrying into the cafeteria fund payment per capita for the aforesaid pupils. This requires an examination of other sections of the code to determine if the board is so authorized or if provision is made for such payment from any other source.

**Sec. 7749-2 GC** authorizes the board of education under certain conditions not applicable here to pay for a child's room and board. **Sec. 7777 GC** authorizes the board under the conditions therein stated to furnish personal necessities for a child, who is otherwise unable to attend school because absolutely required to work at home or elsewhere in order to support himself or help to support or care for others legally entitled to his services, who are unable to support or care for themselves.

There is no claim that the students whose meals are provided free of charge in this case come within the express terms of this section and unless they do so, obviously it cannot have application. If payment for the meals of the pupils who would qualify under this section was made by the board, it would be paid to the cafeteria fund and based upon a per capita allowance.

Under §7777-1 GC, not effective after July 15, 1931, and Senate Bill 64, **115 O. L. 24,** not effective after December 31, 1935, authority was granted to boards of education under conditions set forth

in the acts to provide shoes, clothing, medical attention or other necessaries to children of indigent parents. Authorization under these acts was broad enough to enable the plaintiff board in instances, wherein the pupils could qualify under these sections, to provide free lunches to pupils whose parents were indigent but no such authority is found in any section of the General Code now effective.

Boards of education must cooperate with boards of health in the prevention of epidemics, §7692 GC; may, subject to the approval of parents, provide also for activities of children during the summer vacation which will promote their health, civic and vocational intelligence, industry, recreation, character, or thrift, §7763-2 GC; may employ persons to supervise, organize, direct and conduct social and recreational work in such school district, may engage competent persons to deliver lectures or to give instruction on any educational subject and may provide for the further education of adults, §7622-4 GC; may cooperate with commissioners, boards, and other public officials having the custody and management of public parks, libraries, museums, buildings, and other grounds in providing for education, social, civic and recreational activities in and upon such grounds and buildings; may appoint and compensate a duly licensed physician and school dentist and trained nurses to aid in inspection directed by the board, or delegate such powers and duties to the board of health. The school dentist may make such examination and diagnosis and render such remedial and corrective treatments as the board may prescribe to pupils whose parents cannot afford the same but only upon the written consent of the parent or guardian of such children. §7692 GC. The extent to which school physicians may make examinations and diagnoses of children in schools is fixed by statutes, §§1261-36, 7692, 7692-1 GC. These multifarious provisions of the Code authorizing and empowering the board to do certain acts in the conduct of the schools is convincing that such authority is not contemplated under the general terms of the language as found in §7620 GC.

The petition avers that "§§7690, 7620, 7648, 7625, 7684, 7692, 7692-1, 4762-1, 7707 and 7777 GC, when clearly construed as a whole, afford legal warrant for the expenditures in question, * * *."

We have examined all of the aforesaid sections with care and have made analysis of such of them as is necessary to a determination of the questions presented.

It is our conclusion that there is no authority in the school laws of Ohio for the expenditure which ▇▇▇▇ was supported by the judgment of the trial court in this cause. The question as presented becomes one of law and, therefore, we are required to reverse the judgment and enter judgment against the plaintiff and dismiss its petition.

We are cognizant of the fine purpose which actuates the plaintiff board in providing the material, services and lunches requisite to the program which it has adopted. Such procedure is modern, forward-looking and especially desirable if it can be accomplished under the law. An expenditure of the public school funds for the purpose involved in this action may be authorized under the Constitution by the Legislature upon the hypothesis that the services to be provided are such as may be classified for school purposes. Such authorization is one of legislative cognizance and not for the courts.

GEIGER, PJ., BARNES & HORNBECK, JJ., concur.