FREDERICK LANGBEIN ET AL. v. BOARD OF ZONING APPEALS OF THE TOWN OF MILFORD ET AL.

MALTBIE, C. J., BROWN, JENNINGS, ELLS AND INGLIS, Js.

Argued March 3—decided June 14, 1949.

*Louis Feinmark,* with whom was *Samuel Shapiro,* for the appellants (plaintiffs).

*Richard H. Lynch,* with whom were *Richard H. Simons* and, on the brief, *Omar W. Platt,* for the appellees (defendants).

JENNINGS, J.   On May 8, 1947, Herbert J. Borman applied for a certificate of occupancy for Rosemary

Court in Woodmont, which he claimed he intended to use as a summer day school under the name of Bertcroft. The application was granted by the building inspector and adjoining property owners appealed to the board of zoning appeals of Milford, which dismissed the appeal on June 5, 1947. The plaintiffs appealed to the Court of Common Pleas, which found the issues for the defendants and dismissed the appeal. The plaintiffs then appealed to this court.

The record leaves much to be desired. The building zone regulations of Milford are printed in full. The pamphlet was an exhibit and could have been made a part of the record without printing. The proceedings of several hearings held on the evening when the matter in question was determined are printed. All of this was done pursuant to an order of the court. The only proceedings necessary for the record were those concerning the decision from which the plaintiffs appealed.

The minutes of the meeting of the board of zoning appeals were put in evidence in the Court of Common Pleas and may be summarized as follows: Mr. Borman and his wife are teachers in New Haven. He expected to have two other New Haven teachers to assist him in instructing the children at his day school. He said that when he first advertised this venture he thought the word "camp" would appeal to the children more than the word "'school." He hoped to have forty-five children enrolled who would be transported from Hamden, New Haven and West Haven. The sessions would be from 9 a. m. to 4 p. m. Monday through Friday. Two four-week terms were planned for the summer months.

Property owners from the neighborhood were represented by counsel and objected to the operation of the school on the ground that it was Mr. Borman's intent

to operate a day camp rather than a school. The property is in a residence zone.

The minutes were introduced through the secretary of the board and she was cross-examined by the attorney for the plaintiffs, who brought out the fact that the record was incomplete and that other matters were submitted for the consideration of the board, particularly a printed prospectus in which the operation was originally described as a "day camp." Wherever the word "camp" appeared in the prospectus it had been crossed out and the word "school" substituted by pen. In response to the request of the plaintiffs the court filed a supplemental finding in which it ordered the exhibits printed and also found with respect to the prospectus that "there was evidence before the Board of Appeals that the word 'camp,' had been originally used and later changed to, 'school,' when some question was raised as to whether the intended use was permissible under the zoning regulations of the town."

The applicable section of the zoning ordinance is § 3. It reads in part as follows: "Use Regulations Controlling Residence Zones. In a residence zone, no building or premises shall be used and no building shall be erected or altered which is arranged, intended or designed to be used except for one or more of the following uses: 1. Dwellings. 2. Schools, public libraries, public museums, churches and church buildings. . . . 5. Parks and playgrounds."

The prospectus describes the location and cost and states that the school is for boys and girls between the ages of five and fourteen years and that the activities will be devoted to the teaching of swimming, arts and crafts, boating, hiking, basketball, softball, tetherball, volleyball, badminton, horseshoes, story telling, photography, croquet, fishing and free play. "The children will have the opportunity to pursue their hobbies

and interests under trained supervision." The personnel of the staff is also described. The trial court concluded that upon the record the enterprise was within the meaning of the word "school" as used in the ordinance and that "At any rate the conclusion of the Board to that effect was not so unreasonable, arbitrary and unlawful as to justify interference by the court."

The finding contains all of the material facts in the draft finding to which the plaintiff is entitled. One of the assignments of error is that the trial court refused to admit further testimony as to evidence that the plaintiffs claimed had been before the board. The only testimony outlined by plaintiffs' counsel was to the effect that the board had before it evidence that institutions similar to Bertcroft were generally known and advertised as day camps. The question before the board was whether Bertcroft was a school within the meaning of that word as it was used in the zoning regulations. "The name by which the institution is designated or called is not of controlling importance. The question is to be determined by the activities or character of business or service, and not by the name, since the facts afford a difference of opinion as to which category it belongs." *Crain* v. *Louisville,* 298 Ky. 421, 423, 182 S. W. 2d 787.

The question as to the meaning of the word "school" as used in the ordinance is a matter of its construction and therefore one of law. It does not follow that whether Bertcroft comes within that definition is a question of law. In *Tolland* v. *Willington,* 26 Conn. 578, 582, there was no difficulty about the definition of the word "bridge" as a matter of law. Whether or not, in the application of this definition, the structure in the particular case was a bridge was a question of fact. In *State* v. *Kinkead,* 57 Conn. 173, 17 A. 855, the complaint was for allowing minors to loiter about

premises where liquor was kept for sale. The front room of a store was used for the sale of groceries. The liquor business was carried on in a room in the rear, separated from the front room by a partition. The defendant requested a charge that a conviction could not be based on the presence of minors in the room used for the sale of groceries. This request was refused and (p. 178) "the court, after giving a definition of the word 'premises,' left it to the jury to determine as a question of fact whether the part of the room used for the grocery business was a part of the premises where liquors were kept for sale." This charge was approved. To the same effect are *State* v. *Williamson,* 42 Conn. 261, 263, and *Claffey* v. *Bergin,* 121 Conn. 695, 696, 183 A. 16. See also Crawford, Statutory Construction, §§ 182, 183. The ultimate question therefore is: Could the board reasonably conclude that Bertcroft was a school within the meaning of that term as it was used in the ordinance?

"A statute should be so construed, having in view its object, as to give effect to the legislative intent." *People's Holding Co.* v. *Bray,* 118 Conn. 568, 571, 173 A. 233. The same principle applies to a zoning ordinance. *Darien* v. *Webb,* 115 Conn. 581, 585, 162 A. 690. The primary object of zoning is to promote the health, safety, welfare and prosperity of the community. *Devaney* v. *Board of Zoning Appeals,* 132 Conn. 537, 539, 45 A. 2d 828. Its ultimate purpose is to confine certain classes of buildings and uses to certain localities. *Thayer* v. *Board of Appeals,* 114 Conn. 15 23, 157 A. 273. "Zoning ordinances are in derogation of the right of private property, and where exemptions appear in favor of the property owner, they should be liberally construed in favor of such owner." *In re Appeal of Supply Co.,* 202 N. C. 496, 500, 163 S. E. 462; see *State* v. *Costello,* 61 Conn. 497, 499, 23 A.

868; *Pratt* v. *Litchfield,* 62 Conn. 112, 118, 25 A. 461; *Hart* v. *Board of Examiners of Embalmers,* 129 Conn. 128, 132, 26 A. 2d 780.

A residence zone is intended for residential purposes but many buildings and uses have been held suitable for such a zone which are not strictly residential. Thus, in the ordinance under consideration, the first permitted use is for dwellings but this is followed by "schools, public libraries, public museums, churches and church buildings," clubs, philanthropic institutions, parks, playgrounds, farms, private garages, boathouses, and uses accessory thereto. This partial list indicates that uses of the types named are not ordinarily considered detrimental to the character of a zone primarily intended for residence. Specifically, the fact that the ordinance permits playgrounds in a residence zone indicates that it would not be hostile to the spirit of the ordinance to construe the word "school" as used therein to include an institution which instructs its pupils largely by the method of organized play.

Schools have been generally held suitable in a residence zone. Bassett, Zoning, p. 196; Yokley, Zoning Law & Practice, p. 383. The principle of construction that words are to be given their plain and natural meaning (*Johnston* v. *Hartford,* 96 Conn. 142, 151, 113 A. 273) is of little help, since reference to any standard dictionary will show that "school" has many definitions. Webster's New International Dictionary; 38 Words & Phrases (Perm. Ed.) 304. An early Connecticut case states that "school" is a generic term denoting an institution for instruction or education. *Asylum* v. *Phoenix Bank,* 4 Conn. 172, 177. *State* v. *Leighton,* 35 Me. 195, 198, held that a private school for the teaching of writing was a school within the meaning of the statute construed. The court said (p. 198):

". . . the terms of the Act will embrace all schools for instruction, contributing to education in an enlarged signification, and we do not perceive any reason or authority for restricting the operation of the statute to a single class of schools." Webster, op. cit., gives as the first definition: "A place for instruction in any branch or branches of knowledge; an establishment for imparting education; also, the institution or the collective body of teachers and learners in such a place. . . . When without qualification, *school* is now familiarly used of an institution for teaching children. . . ." See also 47 Am. Jur. 297; 56 C. J. 167. The definition of "education" in Funk & Wagnall's New Standard Dictionary is even broader: *"Education,* as understood today, connotes all those processes cultivated by a given society as means for the realization in the individual of the ideals of the community as a whole. . . . It includes not only the narrow conception of instruction, to which it was formerly limited, but embraces all forms of human experience, owing to the recognition of the fact that every stimulus with its corresponding reaction has a definite effect upon character. It may be either mainly esthetic, ethical, intellectual, physical, or technical, but to be most satisfactory it must involve and develop all these sides of human capacity."

Bertcroft's activities are not entirely confined to physical education but they do emphasize that feature. Health instruction and physical education are required subjects in Connecticut public schools. General Statutes, Cum. Sup. 1935, § 185c (Rev. 1949, § 1349). As is indicated in Funk & Wagnall's definition, education is no longer confined to the narrow conception of instruction. The introductory sections of Williams, Physical Education, and Wood & Cassidy, New Physical Education, discuss the broad educational possibili-

ties of the subject treated. The primary aim is undoubtedly improvement in health. Among other results of a properly administered physical education program are training for leadership, obedience, good citizenship, character building, grace, skill, proper coordination, control of temper and teamwork. In fact, both texts claim that the aims of physical education and general education are the same. Among Webster's definitions of a school is "an establishment for imparting education."

The plaintiff's discussion of the effect of the substitution of the word "school" for "camp" is a relevant argument but not conclusive. As has been pointed out above, it is the actual character of the institution which controls, not the name by which it is called. The plaintiffs cite a number of cases which hold that certain private institutions are not schools within the meaning of the statute involved therein. Most of these are tax exemption decisions subject to special rules, and the others are readily distinguishable. The weight of authority and better opinion are that the word "school" without qualification applies to public and private schools alike. *Board of Commissioners* v. *Tulsa Business College.* 150 Okla. 197, 1 P. 2d 351; *Pitcher* v. *Miss Wolcott School Assn.,* 63 Colo. 294, 165 P. 608; *Rohrbough* v. *Douglas County,* 76 Neb. 679, 681, 107 N. W. 1000; 47 Am. Jur. 298. The intent to use "schools" in the general sense is emphasized by the fact that in the ordinance the word is not modified and is immediately followed by the words "public libraries, public museums."

The plaintiffs' final argument is that, while residents of the zone might reasonably expect the presence of conventional public schools, the town could not have intended to subject them to the inconveniences of Bertcroft, with busses coming and going and its other

activities. It is only necessary to point out in this connection that a public school would be more disturbing than Bertcroft because of its probable size and the length of its sessions, ten months as against two months. See *Miami Beach* v. *State ex rel. Lear*, 128 Fla. 750, 753, 175 So. 537.

The board could properly conclude on the evidence before it that Bertcroft was a school under the broad modern concept of education and within the meaning of the term as it was used in the ordinance. The trial court could reasonably confirm that finding, especially if its action was confined, as the memorandum of decision indicates, to refusing to reverse the action of the board on the ground that its decision was unreasonable, arbitrary or unlawful.

There is no error.

In this opinion the other judges concurred.