W. ROSS LIVINGSTON et al., appellants, v. DAVID C. DAVIS et ux., appellees.

No. 47905.

(Reported in 50 N.W.2d 592)

December 13, 1951.

Hamilton, Cahill & Bartley, of Iowa City, for appellants.

William L. Meardon, of Iowa City, for appellees.

GARFIELD, J.—Three inhabitants of a Class A Residential District in Iowa City brought this action in equity to enjoin defendants from operating in the district a private preschool or nursery school as a claimed violation of the city zoning ordinance and a nuisance. Following trial the court held there was no violation of the ordinance but certain practices of defendants made operation of the school a nuisance. Defendants were enjoined from certain uses of driveways leading to their property and given sixty-five days to remedy other conditions held to be objectionable and to meet certain requirements. Both sides have appealed.

I. During pendency of the appeal one plaintiff (Mrs. Evans), next door neighbor of defendants, died and the property formerly occupied by her as a life tenant has been conveyed by the remainderman to third persons who have not been substituted as parties. Based on these facts defendants have moved to dismiss the appeal of Mrs. Evans and affirm their cross-appeal as to her. We think the motion is good.

The present owners could have been substituted for Mrs. Evans. Section 686.17, Code, 1950; rules 15, 16, Rules of Civil Procedure. There has been ample opportunity for such substitution. Apparently the present owners do not desire to be substituted as plaintiffs.

Of course the deceased Mrs. Evans no longer has any right it is necessary to protect by injunction although she may have had at the time of trial. See Rider v. Narigon, 204 Iowa 530, 215 N.W. 497; Davis & Shangle v. Boyer, 122 Iowa 132, 135, 136, 97 N.W. 1002; Faucher v. Grass, 60 Iowa 505, 15 N.W. 302. See also Price v. Baldauf, 90 Iowa 205, 209, 57 N.W. 710.

II. In their opening brief plaintiffs argue only that operation of defendants' preschool is a violation of the zoning ordinance. They do not argue it amounts to a nuisance. We may therefore assume that contention is waived so far as plaintiffs' appeal is concerned. Rule 344(a)(4)(Third), Rules of Civil Procedure; Tuttle v. Nichols Poultry & Egg Co., 240 Iowa 199, 210, 35 N.W.2d 875, 880, and citations; Carlson v. Bankers Trust

Co., 242 Iowa 1207, 1211, 50 N.W.2d 1, 4. It is true in reply to defendant-cross-appellants' brief plaintiffs seek to sustain the limited relief granted them on the nuisance issue.

III. The area in question is commonly known as Woodlawn Addition at the east end of Iowa Avenue in Iowa City, a tract about 674 feet east and west by 615 feet north and south. The lots, 240 feet deep north and south, front on each side of a private drive extending east from the end of Iowa Avenue. Six residences are on the south, five on the north, side of the drive. Defendants own the fourth house from the west facing north on the drive. The two remaining plaintiffs own the second and sixth homes, respectively, also facing north. Thus one residence separates defendants from each plaintiff. One such residence was Mrs. Evans'.

Woodlawn is in a Class A Residential District under the city zoning ordinance. Permissible uses in the district are stated in twelve subsections of section 395 of the ordinance, one of which is, "(e) Public schools, Colleges, University Buildings and Uses, and Private Elementary Schools, taking only children up to and not exceeding the age of 14." The vital question upon plaintiffs' appeal is whether, as the trial court held, defendants are operating such a private elementary school as the ordinance permits.

Defendants purchased their property in the summer of 1946 for $13,000. Their house is large, with two stories, nine rooms and bath downstairs. October 1, 1946, they started operating their nursery school for children ages two to five in the downstairs, with a playground about 150 by 82 feet (width of their lot) at the rear. Children are brought to the school usually by parents in automobiles between 8 and 9:30 a.m., stay until 4:30 to 5:30 p.m. when their parents call for them. Children do not come on Sundays or holidays and leave at noon on Saturdays. Largest attendance has been fifty children at the time of trial. There are fewer in the summer—thirty-five in 1950.

Defendants, husband and wife, are college graduates and experienced teachers. They employ two other young ladies as teachers and a full-time registered nurse who carefully looks over the children each morning for skin rash and condition of eyes, ears and nose. None of the teachers has a certificate to teach in public schools in Iowa. Children are told stories, taught singing,

26

drawing, painting, coloring, numbers with blocks, and some other things. Records are played, "movies" shown, and there is regular supervised play. The school has regular schedules and rules. Report cards are issued about every eight weeks. Defendants charged $30 a month per child, which had been increased to $35 at the time of trial.

There is expert testimony from professors at the state university that the age limit for schools is being pushed down, preschools are part of the public-school system in some other states, are regarded by people in educational work as part of an elementary school, "there is a definite trend toward including the preschool in the regular school program," children who attend preschool are generally more advanced than others when they enter kindergarten and grade school, defendants' school is an elementary school. This evidence, while of course not controlling, seems worthy of consideration. Witnesses, apparently disinterested and informed, say defendants' school is an excellent one. The state university also operates a preschool in Iowa City.

We agree with the trial court that defendants are operating such a private elementary school as the zoning ordinance permits in a Class A Residential District.

Like many other courts, we have said zoning is an exercise of the police power delegated by the state to the municipality and such delegated power must be strictly construed. Downey v. City of Sioux City, 208 Iowa 1273, 227 N.W. 125; Granger v. Board of Adjustment, 241 Iowa 1356, 1363, 44 N.W.2d 399, 402. Like decisions include City of Little Rock v. Williams, 206 Ark. 861, 177 S.W.2d 924, 925; Langbein v. Board of Zoning Appeals, 135 Conn. 575, 67 A.2d 5, 7; Kass v. Hedgpeth, 226 N. C. 405, 38 S.E.2d 164. And see cases cited next below.

A zoning ordinance should not be extended by implication to prevent a use not clearly prohibited. See Jones v. Board of Adjustment, 119 Colo. 420, 204 P.2d 560, 565; Landay v. Mac-Williams, 173 Md. 460, 196 A. 293, 114 A. L. R. 984, 988; 440 East 102d St. Corp. v. Murdock, 285 N. Y. 298, 34 N.E.2d 329, 331, and citations; Luedke v. Carlson, 73 S. D. . . ., 41 N.W.2d 552, 554; 58 Am. Jur., Zoning, section 11; 62 C. J. S., Municipal Corporations, section 226(16)a, page 480.

There can be little doubt defendants' place is a school. An

accepted definition of school is "a place for instruction in any branch or branches of knowledge." See Webster's New Intl. Dict., 2d Ed.; Alexander v. Phillips, 31 Ariz. 503, 254 P. 1056, 52 A. L. R. 244, 246, 247 (holding stadiums for athletic games are included within the term "schoolhouses"); Langbein v. Board of Zoning Appeals, supra, 135 Conn. 575, 67 A.2d 5, 8.

Another common definition of school is "a place where instruction is imparted to the young." People v. Levisen, 404 Ill. 574, 576, 90 N.E.2d 213, 215, 14 A. L. R. 2d 1364, 1367; Board of Education v. Ferguson, 68 Ohio App. 514, 39 N.E.2d 196, 198; 47 Am. Jur., Schools, section 2. Our conclusion that defendants operate a school finds support especially in the Langbein and Levisen cases, supra, and in People v. Collins, 191 Misc. 553, 83 N. Y. S.2d 124.

If defendants' place is a school certainly it is a private school, organized and managed by individuals, not by the public as an institution of the state. See 47 Am. Jur., Schools, section 2, page 298; 56 C. J., Schools and School Districts, section 3. The only debatable question is whether it is an "elementary" school "taking only children up to and not exceeding the age of 14."

"Elementary" means "Pertaining to * * * the elements, rudiments, or first principles of anything; initial; rudimental." Webster's New Intl. Dict., 2d Ed. Other definitions include "primary; simple." 29 C. J. S. 662. An elementary school has been defined as "a school for the elementary education of children * * *." 56 C. J., Schools and School Districts, section 5. Defendants' school seems to fall squarely within the above definitions.

It is somewhat significant this zoning ordinance specifies only the maximum age limit of children who may attend permissible private elementary schools. The entire ordinance goes into much detail and was evidently intended to be specific. Had it been the purpose to impose a minimum age limit for such schools that purpose could easily have been expressed.

It is true, as plaintiffs argue, a statute pertaining to our public-school system provides that persons between five and twenty-one shall be of school age (section 282.1, Code, 1950). Code section 286.2 in the chapter on Supplementary Aid to School Districts states that for the purposes of this chapter an elementary pupil is one of school age attending public school

who has not entered the ninth grade. A like statute is section 286A.2. And section 260.5 in the chapter on Board of Educational Examiners says, "For the purposes of this act the elementary school field shall be construed to include the kindergarten and grades one to eight * * *."

These statutes relate only to our public-school system in which there are no nursery schools. They do not purport to define or describe private elementary schools. As stated in People v. Collins, supra, 191 Misc. 553, 554, 83 N. Y. S.2d 124, 125, "* * * there is not necessarily any relationship between the Education Law definition of a school and the zoning ordinance definition."

Although public elementary schools include only kindergarten and the first eight grades we see no reason why private elementary schools may not include such a school as defendants operate. Public elementary schools include the first school the public provides for beginners—kindergarten. Why may not private elementary schools likewise include the first school they provide for beginners—the nursery school?

Plaintiffs argue that because defendants make a charge for children attending their school it is a business and therefore, they say, it is not permitted in this Class A Residential District. If the use defendants make of their property is permitted by subsection e of the ordinance it is not material whether they are engaged in a business. Characterization of use as business or no business is not the test of uses permitted by the ordinance. See Jones v. Board of Adjustment, supra, 119 Colo. 420, 204 P.2d 560, 564. Of course there is a considerable element of business in the operation of any school. Defendants are no more engaged in business than if they operated a kindergarten and the first eight grades which admittedly would be permitted.

Section 295 of the ordinance (which includes subsection e) does not purport to prohibit all business in a Class A district. On the contrary it expressly permits several businesses or uses for profit such as municipally owned utilities; concessions incident to publicly owned country clubs; farming, truck gardening and nurseries and sale on the premises by members of the family of goods raised thereon; accessory uses incident to any permissible use, including professional offices, but not any retail or

wholesale business or manufacture. And the next section of the ordinance expressly prohibits hospitals, sanatoriums, rest cures, retreats and funeral homes in a Class A district.

It does not seem reasonable this zoning ordinance was intended to restrict such a use as defendants make of their property to an Industrial District. Certainly that would not be a suitable place for it. Yet this is the necessary result if plaintiffs' argument should be accepted. The only uses permitted in a Class B Residential District or a Business District (only districts into which the city is zoned other than Class A and Industrial) are those specified for Class A and certain designated additional uses, none of which includes a school.

Schools have usually been held suitable in a residential zone, not detrimental thereto, and courts have frowned on efforts to remove them therefrom. Yokley, Zoning Law and Practice, section 161, pages 317, 318; Langbein v. Board of Zoning Appeals, supra, 135 Conn. 575, 67 A.2d 5, 7.

IV. On the issue of nuisance, as stated, the trial court in effect ordered defendants to eliminate certain conditions held to be objectionable and to meet some other requirements. Defendants have appealed from this part of the decree and plaintiffs seek to sustain it. One such requirement is that defendants refrain from using a loud-speaker in directing the children at play. Defendants do not object to this requirement and therefore we need not consider it.

The court required defendants to lower to not more than forty inches and otherwise rebuild a six-foot wood fence built around their playground at a cost of over $500 about two months before this suit was started. The fence replaced one of wire. The court found the new fence is unsightly. We cannot sustain this requirement.

There is no complaint in plaintiffs' petition regarding this fence. The petition specifies in detail wherein it is claimed defendants have created a nuisance. Nor does the evidence justify the order pertaining to it. One of the two remaining plaintiffs as a witness says in effect her only complaint is the noise incident to the school. Another witness for plaintiffs, the nurse in the public schools who lives in Mrs. Evans' former home next to defendants, testifies she told defendant Davis she approved of

the fence and would like one similar to it put in her back yard. Pictures of the fence have been certified to us.

█ Relief should not be granted which is outside the issues and without support in the evidence. Paintin v. Paintin, 241 Iowa 411, 41 N.W.2d 27, 16 A. L. R.2d 659, and citations; 30 C. J. S., Equity, section 604; 19 Am. Jur., Equity, section 408.

█ █ Further, that a thing is unsightly or offends the aesthetic sense does not ordinarily make it a nuisance or afford grounds for injunctive relief. Parkersburg Builders Mtl. Co. v. Barrack, 118 W. Va. 608, 191 S.E. 368, 192 S.E. 291, 110 A. L. R. 1454, 1460, and citations; 39 Am. Jur., Nuisances, section 29; 66 C. J. S., Nuisances, section 111b, page 873. See section 657.2, Code, 1950, as to what are deemed nuisances. 22 Am. Jur., Fences, section 43, page 547, states, "Conversely, a fence erected without the motive of spite or malice cannot be enjoined even though the adjoining proprietor may be annoyed thereby."

█ As a further condition to denial of injunctive relief to plaintiffs defendants were required to file within sixty-five days a written report of the local board of health as to sanitary and health conditions of their school and of any recommendations, also a written report of the chief of the city fire department as to proper fire protection of their school and of any recommendations. Defendants say in argument they were unable to procure such reports until nearly ninety days after the decree. The record does not show their contents. Plaintiffs do not argue there is anything unfavorable to defendants in either report, if they were filed. We find no basis in the pleadings, proof or findings of the court for imposition of this condition.

Defendants' registered nurse testifies, "The school is very clean and exceptionally sanitary. As far as health is concerned there is definitely no reason why young children shouldn't get along there perfectly well." Defendant Mrs. Davis says, "We have been inspected by the fire inspector and know the rules. We have fire extinguishers." We find no evidence contrary to the above. The court found "the evidence indicates there are no fire or health hazards existing." The burden was upon plaintiffs to plead and prove wherein defendants created a nuisance. Plaintiffs made no attempt to show the health of the children was endangered or they were exposed to fire hazards. We need not con-

sider whether such a showing would entitle plaintiffs to relief.

Further, our attention is called to no law which requires either the local board of health or fire chief to furnish such a report even if it would be entirely favorable to defendants. Nor would such reports be competent evidence against defendants. Denial of injunctive relief to plaintiffs should not have been conditioned upon defendants' procuring reports from third persons, not parties to the suit, under no legal duty to furnish them.

The remaining condition the decree imposed is to limit enrollment in defendants' school to fifty children. We think this condition is unwarranted. The effect of the decree is that upon compliance with the other conditions therein the nursery school with fifty children would not be a nuisance, but a larger attendance would necessarily make it one. The record does not support such conclusion. Plaintiffs make no attempt to justify this condition beyond the statement the court did not exceed its authority in imposing it.

If defendants in any respect operate their school in the future so it becomes a nuisance plaintiffs will have their remedy. See Dawson v. Laufersweiler, 242 Iowa 757, 48 N.W.2d 228. An anticipated nuisance will not be enjoined unless it clearly appears a nuisance will necessarily result from the act (here the attendance of more than fifty children) it is sought to enjoin. Relief will usually be denied until a nuisance has been committed where the thing sought to be enjoined may or may not become such, depending on its use or other circumstances. Amdor v. Cooney, 241 Iowa 777, 784, 43 N.W.2d 136, 141, and citations.

V. We have referred in Division III hereof to the gravel drive extending east from the end of Iowa Avenue through the center of Woodlawn Addition. There is also a gravel drive or alley, half the width of the center drive, extending east along the south side of the addition from Muscatine Avenue which in turn goes southeast from the end of Iowa Avenue along the west side of the south half of Woodlawn. This south drive is at the rear of the south row of lots in Woodlawn, including those of the parties hereto.

The trial court enjoined defendants and their patrons from using any vehicles on either of these drives to take children to

and from defendants' school and from permitting the children to walk to the school along the south drive. The children are permitted to walk to the school on the center drive or the sidewalk adjacent thereto in the custody of attendants of the school or other adult. This requires the children to walk 355 feet from the entrance to Woodlawn to the northwest corner of defendants' lot. It is about 190 feet from the entrance to the south drive to defendants' southwest corner.

Heretofore automobiles taking children to and from the school have used mainly this south drive which goes along the rear of plaintiff Livingston's property. The other plaintiff lives at the east end of Woodlawn and admits she has not been affected by the dust from the traffic to defendants' school. There is no entrance to or exit from Woodlawn on the east. Cars enter from the west, go to their destination, turn around and leave Woodlawn at the same place.

Under the original dedication the drives in Woodlawn are private drives, not public streets. Each lot owner owns the portion of the south drive, and of the middle drive to the center thereof, that abuts his lot, subject to the right of other lot owners in Woodlawn to use the drives in connection with the use of their own properties. Thus each owner has an easement in both drives.

The injunction against vehicular use of the drives by defendants and their patrons in transporting the children seems to be based in considerable part upon the trial court's belief the drives could be used only as incident to the property in Woodlawn as homes and for no other purpose. We cannot share this belief. This matter was also outside the issues. Plaintiffs sought no relief based on any claimed violation of restrictions in defendants' title or their easement in the drives. Further, there is no restriction in the dedication of Woodlawn or the title to defendants' property that it must be used for residential purposes. Nor is use of the drives or amount of traffic thereon restricted to that incident to the lots as homes.

Defendants are therefore entitled to make any lawful use of their property not prohibited by the zoning ordinance and not a nuisance and to use the drives for any purpose to which their property may reasonably be devoted. See McDonnell v. Sheets, 234 Iowa 1148, 1154, 15 N.W.2d 252, 255, 156 A. L. R. 1043, 1047;

17 Am. Jur., Easements, section 101. The injunction against use of the drives can be justified, if at all, only on the theory the dust and noise from patrons' cars along the south drive· is so offensive to plaintiff Livingston as to amount to a nuisance.

 We are clear the prohibition against the children *walking* over the south drive cannot be upheld. What little annoyance might result to the Livingstons from such use of the south drive would plainly not amount to a nuisance. As previously indicated, it requires a walk of only about 190 feet over the south drive to reach defendants' premises rather than 355 feet over the center drive. And the center drive is mostly upgrade to defendants' property while the south ·drive is nearly level.

Heretofore forty or more automobiles used the south drive to deliver the children to defendants' premises in the morning and to get them in the evening. Since there is no passageway from Woodlawn to the east and no means of going from the south drive to the center one, each car must pass the rear of the Livingston home twice on each trip—in all one hundred sixty times within about two hours each day. Such use of the gravel drive doubtless results in some annoyance to the Livingstons in the way of dust and noise and, to some extent, inconvenience in their own use of the drive and access to their own property.

While plaintiffs Mr. and Mrs. Livingston and the deceased Mrs. Evans testify the dust caused by patrons' use of the south drive was unbearable, less interested witnesses do not corroborate them nor does the whole record warrant such conclusion. A witness *for plaintiffs on her direct examination* (a member of the faculty of the state university who lived in Mrs. Evans' home) gives what we think is a fair appraisal of the situation when she says:

"There is a good deal of dust when the weather is dry and when the wind blows in our direction. I have not noticed the dust blow into the Evans home or our apartment in particular. I have not paid too much attention to the lawn because I don't go out very often. But on a few occasions when I have gone out to empty the garbage in the back, I could see that it is very dusty near the road."

We are cited to no authority which sustains the proposition

that such annoyance as plaintiffs experienced because of patrons' vehicular use of the drives amounts to a nuisance entitling plaintiffs to injunctive relief. We think defendants and their patrons are entitled to use the drives to take the children to and from school. Casteel v. Town of Afton, 227 Iowa 61, 287 N.W. 245, and Ness v. Independent School District, 230 Iowa 771, 298 N.W. 855, tend to support our conclusion.

VI. In view of the conclusions heretofore reached it becomes unnecessary to consider defendants' contention plaintiffs are barred from maintaining this action by unconscionable conduct, laches and estoppel.

 VII. Defendants complain that the trial court taxed all costs in that court to them. In an equity action the trial court has a large discretion in the matter of taxing costs and we will not ordinarily interfere therewith. McGarry v. Mathis, 226 Iowa 37, 46, 282 N.W. 786, and citations. However, in view of our disposition of the case it seems clear all the costs should not be taxed to defendants.

Plaintiffs have failed in their attempt to enjoin operation of the nursery school as a violation of the zoning ordinance, as a nuisance or as a violation of chapter 237, Code, 1950 (a matter it has been unnecessary to consider herein). Only very limited relief has been finally awarded them and defendants do not challenge such relief in this court. Upon their appeal plaintiffs have been wholly unsuccessful while defendants have succeeded in substantial part upon theirs. We think four fifths the costs in both courts should be taxed to plaintiffs, one fifth to defendants. See in this connection McDonnell v. Sheets, supra, 234 Iowa 1148, 1157, 15 N.W.2d 252, 256, 156 A. L. R. 1043, 1049.

The appeal of plaintiff Mrs. Evans is dismissed. Upon the appeal of the other plaintiffs the case is affirmed. Upon defendants' appeal the case is affirmed in part, reversed in part and remanded.

All JUSTICES concur.