CHARLES J. SCHUELLER, appellant, v. BOARD OF ADJUSTMENT of the CITY OF DUBUQUE, defendant-appellee, and WARTBURG THEOLOGICAL SEMINARY, intervenor-appellee.

No. 49621.

(Reported in 95 N.W.2d 731)

APRIL 8, 1959.

Kenline, Roedell, Hoffman & Reynolds, of Dubuque, for appellant.

Thomas H. Nelson, of Dubuque, for defendant-appellee.

O'Connor, Thomas, McDermott & Wright, of Dubuque, for intervenor-appellee.

THORNTON, J.—Intervenor, Wartburg Theological Seminary, a nonprofit religious and educational institution located in Dubuque, owned and operated by the American Lutheran Church, a religious corporation, applied to the building commissioner of Dubuque for a permit to erect a married students' dormitory to house twenty married students, their wives and children, on its campus on a vacant lot adjoining plaintiff's property. The application states that this is the first of five such dormitories intervenor plans to erect on its campus.

The campus of intervenor consists of thirty-three acres acquired in 1888. The seminary began operation in 1889.

Plaintiff acquired his property in 1954 and completed a home thereon, at a cost of about $100,000, in 1956.

The properties are adjoining and located in the single family residence district under the provisions of the Zoning Ordinance adopted in 1934 pursuant to what is now chapter 414, Iowa Code, 1958.

The building commissioner, after obtaining an opinion from the city solicitor, granted the application. Plaintiff, joined by fifteen other property owners in the same residence district, appealed to the Board of Adjustment. The board denied the appeal by a three to two decision and this action followed.

The pertinent parts of the zoning ordinance are as follows:

"ARTICLE II. SINGLE FAMILY RESIDENCE DISTRICT.

"Section 1. Use Regulations.

"No building or premises shall be used and no building or structure shall be erected or altered to be used in whole or in part, unless otherwise provided for in this ordinance, except for the following purposes:

(a) Single family dwelling.

(b) Educational, religious or philanthropic use, exclud-

ing business school and college or correctional institutions.

(j) Accessory use on the same lot with and customary incident to any of the above permitted uses. * * *."

"ARTICLE IV. MULTIPLE RESIDENCE DISTRICT.

"Section 1. Use Regulations.

"No building or premises shall be used, and no building shall be erected or altered to be used in whole or in part, unless otherwise provided for in this ordinance, except for the following purposes:

(a) Uses permitted in a Two Family Residence District.

(b) Multiple Dwelling."

Said zoning ordinance defines a multiple dwelling as follows: "A building designed for or occupied by three or more families living independently of each other."

The able trial court found as a matter of fact and as a conclusion of law the contemplated use of the building for married students, their wives and children, will serve both an educational and religious use and purpose, and is a permitted use in the single family residence district, and as a matter of law that such building is not a "multiple dwelling" within the terms of the ordinance. With this holding we agree.

Intervenor introduced testimony of Dr. Virgil M. Hancher, president of the State University of Iowa, Dr. Alfred H. Ewald, president of intervenor, and five other educators to establish that married students' dormitories are a proper and appropriate educational and religious use. And they are considered to be a necessary responsibility of educational institutions in light of the number of married students, particularly at the graduate and professional level. Plaintiff offered no evidence on this point and concedes it here. See Trustees of Griswold College v. State of Iowa, 46 Iowa 275, 26 Am. Rep. 138; The Church Divinity School v. County of Alameda, 1957, 152 Cal. App.2d 496, 314 P.2d 209.

The hearing in the trial court was de novo to determine the legality of the action of defendant, Board of Adjustment. The hearing in this court is on assigned errors, the findings of fact of the trial court having the force of a jury verdict.

Sections 414.15 and 414.18, Code of Iowa, 1958; rule 318, Rules of Civil Procedure. See also Anderson v. Jester, 206 Iowa 452, 221 N.W. 354; Crow v. Board of Adjustment, 227 Iowa 324, 288 N.W. 145; Granger v. Board of Adjustment, 241 Iowa 1356, 44 N.W.2d 399.

■ The question for decision is one of law, the interpretation and application of apparently conflicting provisions of an ordinance. Western Theological Seminary v. City of Evanston, 325 Ill. 511, 156 N.E. 778; Missionaries of Our Lady of La Salette v. Village of Whitefish Bay, 267 Wis. 609, 66 N.W.2d 627; Livingston v. Davis, 243 Iowa 21, 50 N.W.2d 592, 27 A. L. R.2d 1237; Crow v. Board of Adjustment, 227 Iowa 324, 288 N.W. 145.

■ Plaintiff contends that a married students' dormitory, which as a matter of fact serves a religious use and purpose, is a multiple dwelling and prohibited in the single family residence district. It is apparent that the dormitory is constructed like an apartment house. The definition of a multiple dwelling as contained in the ordinance is set out above. This contention is fully answered in the Western Theological Seminary case, supra. In that case the Illinois court in dealing with the contention that a single men's dormitory and dining hall should be excluded from an "A" residence district as a tenement house, hotel, lodging house or boarding house allowed only in "B" districts, said at page 520 of 325 Ill., page 782 of 156 N.E.:

"The provision of the ordinance authorizing the erection and use of buildings for schools and colleges in a residence district does not refer to the same subject matter as tenement houses, hotels, private clubs and fraternity houses, boarding and lodging houses, referred to in the provision of the ordinance with respect to a 'B' residence district."

The wording of the ordinance is plainly directed to the use to be made of the land and buildings. Each ARTICLE provides: "Use Regulations. No building or premises shall be *used* and no building or structure shall be erected or altered to be *used* * * *", and paragraph (b), section 1 of ARTICLE II makes an exception for: "Educational, religious or philanthropic *use* * * *." (Italics supplied.)

There is no need to construe this ordinance. The plain

words provide for the *use*, not the particular type of building. It follows that a building that may be used as an apartment house or multiple dwelling is not so used when in fact it is being used as a married students' dormitory, an educational and religious use. Under the circumstances of this case, where we have the building on a campus with other school buildings, a campus that has been used as such for seventy years, this conclusion is inescapable.

Plaintiff urges us to consider the preamble and the time of the enactment of the ordinance and by so doing arrive at the conclusion that this type of educational and religious use was not in the mind of the council at the time and that this use would be contrary to the intent as expressed in the preamble, as to traffic, concentration of population, overcrowding of land and to conserve the value of land.

The authorities cited by plaintiff do not extend to this case. Smith v. City of Brookfield, 1956, 272 Wis. 1, 74 N.W.2d 770, turns on the question of the constitutionality of a provision in an ordinance which requires that before certain uses (including sand and gravel pits under consideration) may be made of the property "the location and plan of operation" shall be submitted to the board of appeals for approval. The contention was that no standards or guides were set up for the board in the issuance or denial of permits for such use. The court held the preamble setting out the intent and purpose of the ordinance could be resorted to by the board of appeals to provide limits and guides to the discretion to be exercised by the board, and thus save the constitutionality of the ordinance.

The case of Westchester County Society etc. v. Mengel, 292 N. Y. 121, 125, 126, 54 N.E.2d 329, 330, 331, cited by plaintiff actually gives support to our reasoning here. The court there held a dog pound operated by a Society for the Prevention of Cruelty to Animals did not come within the provision allowing " 'philanthropic or eleemosynary use or institution other than a camp, sanatorium, hospital, correctional institution or institution for the insane.' " In doing so the court said, "Here these words are used together with limitations or exceptions which are apposite only to uses and institutions intended to promote the welfare of human beings."

The case of Yanow v. Seven Oaks Park, Inc., 1953, 11 N. J. 341, 94 A.2d 482, 36 A. L. R.2d 639, cited by appellant, deals with the meaning of "public and parochial schools", a permitted use under an ordinance enacted in 1922. The court there held a post-high school for specialized religious training for the ministry and missionary work was not included in the permitted use. The court referred to the history of the enactment to determine the meaning of "public and parochial", and determined such terms included only grade schools and high schools.

At the time of the enactment of the ordinance the Dubuque City Council did not see fit to use words of limited meaning in describing educational and religious use. Instead the council said: "(b) Educational, religious or philanthropic use, excluding business school and college or correctional institutions."

These words are not limited but general and include all educational, religious or philanthropic use, and from this type of use only exclude by plain mandate "business school and college or correctional institutions." The council chose not to use limited words as "public and parochial" or require the approval of a board as to "the location or type of operation."

In 1934 there were located in Dubuque two colleges, one university and the seminary, intervenor here. It is not a strained assumption to assume the council at that time took this fact into consideration and used general terms so in no way to hamper the natural growth of these institutions. It may have considered the growth of these institutions to be within "the general welfare" of the City of Dubuque, a purpose set forth in the preamble. Also the council did not see fit to limit the "use" by designating the kind or type of structure.

Plaintiff also urges his right to rely upon the restrictions contained in the ordinance and that he should not be denied those benefits by interpretation. Then, as now, the ordinance contained the general language for educational and religious use, and the land plaintiff purchased joined land that had been a campus for almost seventy years.

Educational and religious buildings are generally held to be suitable in a residential zone. See Dubuque Zoning Ordinance

No. 3-34; Livingston v. Davis, 243 Iowa 21, 50 N.W.2d 592, 27 A. L. R.2d 1237; Langbein v. Board of Zoning Appeals, 135 Conn. 575, 67 A.2d 5; chapter 415, Code of Iowa, 1958.

Intervenor's motion to dismiss the appeal was ordered submitted with this appeal and the same is hereby overruled.— Affirmed.

All JUSTICES concur.