FARMERS DRAINAGE DISTRICT and C. W. Montgomery, C. E. Sumner, and Al Wendel, Trustees of the Farmers Drainage District, Plaintiffs,

v.

CHICAGO, MILWAUKEE, ST. PAUL AND PACIFIC RAILROAD COMPANY, Defendant.

Edward E. Penner et al., Intervenors.

Civ. No. 1160.

United States District Court
N. D. Iowa, W. D.

Nov. 6, 1963.

Kindig, Beebe & McCluhan, Sioux City, Iowa, for plaintiffs.

Shull, Marshall, Mayne, Marks & Vizintos, Sioux City, Iowa, Evans, Duncan, Jones, Hughes & Riley, Des Moines, Iowa, for defendant.

Kindig, Beebe & McCluhan, Sioux City, Iowa, for intervenors.

HANSON, District Judge.

The Farmers Drainage District has petitioned this court to declare the defendant's bridge, T-182½, which bridge crosses the plaintiffs' ditch, a nuisance and for the court to order that the bridge be elevated so that the bottom does not extend below the tops of the present dikes which run along the ditch. Certain property owners have intervened and it is claimed that the defendant's bridge is both a public and a private nuisance.

The action is based on diversity of citizenship.

Plaintiffs' allegation is that the bridge and debris and ice which pile up against it impede the flow of water and that this impeding of the flow of water damages the dikes and jeopardizes surrounding farm land. They claim this will continue until the bridge is raised and that the defendant refused to raise the bridge.

The defendant pleaded a number of defenses to the action: (1) that in 1929 the Drainage District agreed that the bridge would not have to be further raised, (2) that the design of the ditch is ineffective, and (3) that the ditch has not been properly maintained.

The plaintiffs replied that (1) any failure on the part of the Drainage District is not binding on the intervenors and (2) that the bridge is a proximate cause of the situation constituting the nuisance.

The ditch is about 8 feet deep from ground level and 14 to 16 feet from the top of the dike. It is about 80 feet to 100 feet across from dike to dike. The testimony was that in the spring the ditch sometimes runs full from dike to dike. It flows under defendant's bridge, T-182½. Through the years the flow of water has increased in the ditch and the banks have been increased in both width and height. The ditch is dredged a considerable part of each year but cannot be kept free of silt. The problem is increased because the ditch flows to the Missouri River through land with a slight gradient. Hence it would not help much to deepen the ditch. Also a cutoff built by the Army Engineers prevents the ditch from being effectively deepened. There is one settling basin on the upper part of the ditch. There formerly was another one. Experts testified that the ditch was in good condition and can be maintained.

The evidence was that the dike had broken twice. Once the dike broke downstream where the ditch parallels the defendant's track. Once the dike broke upstream from the defendant's track. There was not complete agreement as to exactly how far upstream the break was. The evidence was that it was about one mile upstream. The evidence showed that during high water in the spring ice and debris sometimes piled up against the bridge and that water was up above the bottom of the bridge about three feet. The expert for the defendant testified that this could have no effect one mile or even one-half mile upstream. This was not contradicted by any expert testimony or by any testimony which could overcome its significance.

1. No act or omission on the part of the defendant produced the result or damage of which the plaintiffs complain.

2. The defendant's bridge, T-182½, did not obstruct the passage of water in an unreasonable manner.

3. No obstruction of the water by the defendant's bridge produced the breaks in the dikes complained of nor did any obstruction of the water by the defendant's bridge produce this result.

4. There was no proof that the defendant's bridge damaged the dikes and jeopardized the surrounding farm land nor any proof that the defendant produced this result.

5. The defendant fulfilled its statutory duty in providing for reasonable passage of water through the plaintiffs' ditch.

6. The plaintiffs did not prove that the breaks in the dike would recur or that any recurrent irreparable harm could be caused by the defendant's bridge.

The burden was on the plaintiffs to plead and prove wherein the defend-

ants created a nuisance. Livingston v. Davis, 243 Iowa 21, 50 N.W.2d 592, 27 A.L.R.2d 1237. The duty owed by the defendant to the plaintiffs is statutory but is not completely clear.

In De Lashmutt v. Chicago, B. & Q. R. Co., 148 Iowa 556, 126 N.W. 359, the court in dicta stated that the railroad had a duty to construct an opening for the ditch which will comply with the reasonable requirements of the Drainage District. In the case of Chicago, B. & Q. R. Co. v. Board of Supervisors, 182 F. 291 (8th Cir.), the court ruled on this point. In that case, the court indicated it did not think that the fact that the ditch did not follow a natural water course affected the railroad's duty to provide passage for water in the ditch. The Iowa law on this point is statutory. 455.123 I.C.A. puts the burden on the railroad to reconstruct necessary bridges across drainage ditches when located at the place of the natural waterway or place provided by the railroad company for the flow. Section 455.6 I.C.A. states that if the ditch is located at a place provided by the railroad for the flow, the railroad cannot afterwards complain that it is not at the place of the natural waterway. The parties have cited numerous Iowa cases on this problem. Most of them are not in point. It does appear that in damage cases involving surrounding landowners that the court has drawn some distinction between natural and artificial waterways. The cases do not indicate that the same is true where the drainage district is concerned. There is an extensive annotation on these problems in 19 A.L.R.2d 950.

■ The Drainage District had the duty to construct levees which are not faulty and deceptive. Also the Drainage District has a duty not to maintain its ditch in a careless or improper manner. De Lashmutt v. Chicago, B. & Q. R. Co., supra. The evidence was that the Drainage District in part fulfilled this duty, but that they did not do all that could be done at least in the way of the settling basins. The situation as the court finds it is that because of the low gradient of the land which the ditch must pass over toward the river, and because of the Army Engineers' project, there was no way to keep the ditch from running bank full in the spring of the year. This the court feels was the cause of the flooding and the court cannot find that the defendant's bridge contributed to the problem in any material degree.

■ The alleged act or the failure to act of the defendant must be proven to have caused the result or damage complained of. Bunn v. Standard Oil Company, 251 Iowa 7, 99 N.W.2d 436. No such causation was proven. There are a number of cases on this point which are significant even though the action was for damages in the cases. In Atchison, Topeka & Santa Fe Ry. Co. v. Hamilton Bros., 192 F.2d 817 (8th Cir.), the facts are about the same as the present case except that it was an action for damages. The levee broke about one mile up from the railroad bridge. This case turned on Missouri law which is almost identical to the Iowa law on this subject. There was evidence that water did get up on the stringers at the bridge at times, and that the bridge would catch the debris as it came down the creek. The evidence in that case as to the amount of water which would back up as a result of the bridge was much more favorable than it is to the plaintiffs in the present case and yet the court held that the bridge could not be a proximate cause of the break one mile upstream. The fact that there were no willows in the ditch comparable to those in the creek in that case would not change the view of the court that the bridge could not have a significant effect one mile upstream.

The case of Moore v. Chicago, B. & Q. Ry. Co., 75 Iowa 263, 39 N.W. 390 is easily distinguished from the present case because of the factual difference.

■■ The defendant claims that an agreement was made in 1929 whereby it was agreed that the defendant would not have to further raise its bridge. It is not claimed that the intervenors or their predecessors in title were parties and

therefore they wouldn't be bound. Johnson v. Chicago, B. & Q. R. Co., 202 Iowa 1282, 211 N.W. 842. The Drainage District did not bring this case under Chapter 455 of the Iowa Code, I.C.A. The problem in this case could not· be improved by raising the railroad bridge, but, because of the topographical situation, it could possibly be improved by widening the ditch. If this was done, it might become necessary for the railroad to lengthen the bridge. In Pleak v. Chicago, R. I. & P. Ry. Co., 191 Iowa 1018, 183 N.W. 402, the court said:

"There was no sufficient evidence before the court from which it could be fairly determined to what extent there should be additional openings in said railway embankment, and the trial court properly .denied the injunctive relief prayed for."

The same is true in the present case. The Drainage District has not shown what increase in capacity of the ditch or bridge would solve the problem. A plan to widen the ditch and lengthen the bridge wouldn't be brought as a nuisance suit. This should be conducted according to the statutory procedure in Chapter 455 of the Iowa Code. The effect any agreement such as the one alleged in this proceeding might have on an action under Chapter 455 does not now need to be decided.

There are decisions, usually involving zoning regulations, where the courts have indicated that a person might comply with the statutory duty and still create a nuisance. It was not argued that this could be so in this case. On the facts of this case, the court does not see how the defendant's bridge could be a nuisance if it complies with the statutory duty of providing passage for the water. This is especially so because the only claim of nuisance is the impeding of the flow of the water.

.The defendant argues that because they complied with the original requirements of the drainage plan for this ditch they had fulfilled their duty and could not now be required to again raise the bridge. The plaintiffs argue that the duty is a continuing one and that the defendant must modify its bridge in such a way as will allow continued drainage improvements to be made by the Drainage District. The court feels that even if the law is as the plaintiffs say it is, the defendant's bridge does not impede the reasonable flow of the water and it does not damage or contribute to any damage to the dikes along the bridge. The court feels that the railroad owes no greater duty than to not impede the reasonable flow of water in the ditch so as to not damage the dikes. De Lashmutt v. Chicago, B. & Q. R. Co., supra; Chicago, B. & Q. R. Co. v. Board of Supervisors, supra.

The complaint of the plaintiffs as heretofore indicated and as stated by the plaintiffs themselves is that the bridge at its present elevation constitutes a nuisance. They thus seek mandatory injunctive relief which would require the railway company to abate the nuisance by elevating the bridge. So the problem becomes acute to determine what it is that the bridge does that brings about the complaint. It is said that the bridge is so low and extends so far into the ditch that it impedes the flow· of water, permits debris and ice to accumulate, and thus back up the water in the ditch causing the ditch to ultimately above the bridge spill water into the surrounding territory.

It would appear from the evidence offered and introduced in this cause that there are 250,000 acres of land involved in the drainage problem in the valley running from Sioux City south to the River Sioux. It further appears that there are many drainage districts, not only in Woodbury County but also in Monona and Harrison Counties, and although these are not all under the control of the plaintiff district, they do in truth and fact affect the area. Actually, the plaintiff district comprises approximately 50,000 acres and runs from a point near Sargeant Bluff in Woodbury County to the Woodbury County-Monona line. From there, it flows into the Monona-

Harrison Drainage District in Monona and Harrison Counties, and then south near to River Sioux in Harrison County. The evidence further shows that the Drainage District is a relatively flat territory with very slight gradient with the fall approximately one foot to the mile. The evidence further discloses that the Army Corps of Engineers have made improvements in Harrison and Monona Counties by way of cutoffs and otherwise which directly affect the flowage of water in the Farmers Drainage District. The evidence further discloses that this has brought about an effect which cannot permit the deepening of the Drainage District here involved. The evidence here is also that when there is heavy flow of water, the ditch runs to fairly near its full capacity most of the way. Competent testimony by way of experts in this cause has indicated to the court that when the water is high that immediately below the bridge and immediately above the bridge, the water is about the same height at all times. It would thus indicate that even if the bridge were completely removed, the elevation of the water would not be materially changed, and in any event, any impediment that the bridge may cause would be extremely local in nature.

With these admitted facts in the record, the court would be hard pressed to find that the proximate cause of the nuisance complained of could be attributed to the bridge. Neither could the court conclude that it would rise to the dignity of a concurrent cause. Thus, it would appear to the court that the nuisance complaint must fail.

The profound problem presented here indicates change in design of a drainage process. The rights and liabilities of the parties, plaintiffs and defendant, would then be different, and if controversy arose, matters pertaining to those problems would have to be decided another day.

Accordingly, this court concludes as a matter of law that the plaintiffs' cause and the Petitions of Intervention should be dismissed and, accordingly, a judgment will be entered.

It is ordered that the foregoing shall constitute the findings of fact, conclusions of law, and order for judgment in this case. Rule 52(a) of the Federal Rules of Civil Procedure.