STANLEY, PLAINTIFF, *v.* LIKE ET, DEFENDANTS.

Common Pleas Court, Scioto County.

No. 46522. Decided January 12, 1962.

*Mr. Everett Burton,* prosecuting attorney, for Board of Education, Minford Local School District.

*Mr. Charles A. Brown, Jr.*, for Leslie Hunt, Administrator of the Estate of A. P. Hunt, deceased.
*Mr. Ernest G. Littleton*, for plaintiff.

THOMPSON, J. This case is before this court for a declaratory judgment on the petition of the plaintiff, a taxpayer, against the Board of Education of the Minford Local School District. The case has been submitted to the court for a decision upon stipulations agreed upon by counsel for all parties.

The controversy grows out of an agreement entered into on July 22, 1959, by the Board of Education of the Minford Local School District and A. P. Hunt, which agreement was designated an "Option" and which is set forth in full in the stipulations. Since we must interpret the agreement, it is necessary in order to understand this opinion that portions of the agreement be set forth herein. The first paragraph of the agreement reads as follows:

"Know all men by these presents: That I, A. P. Hunt, of the State of Ohio, County of Scioto, in consideration of the sum of $1,000.00 received to my full satisfaction of Minford Local School District, of Minford, Scioto County, Ohio, do hereby give and grant unto the said Minford Local School District, its successors and assigns, the exclusive privilege and option to purchase at any time prior to 12:00 Noon on the first day of July, 1960, for the price and upon and under the provisions, terms and conditions hereinafter set forth, the following described premises situate in the Township of Harrison, County of Scioto and State of Ohio, and more particularly described as follows:"

Then follows the description of the real estate which is the subject of the agreement and then continues the agreement as follows:

"The price to be paid for said premises shall be the sum of $26,297.00, payable as follows:

"1. The sum of $2,000.00 in cash with the notice of the exercise of said option.

"2. The balance of said total purchase price after the deduction of the sums paid for and in consideration of the exercise of said option together with the sum paid at the time of the exercise of said option, said balance to be paid in cash upon the deliverance of a deed of conveyance of said premises. However, it is specifically understood by and between the parties that any and all sums which have been paid by said Minford Local School District in consideration of said option shall be deducted from said $26,297.00. Taxes and assessments due at the time of the exercise of said option shall be pro-rated as between the said parties.

"In order to exercise said right, privilege and option, said Minford Local School District shall give notice in writing to the said A. P. Hunt, either by delivering the same to him personally or by registered mail.

"Said A. P. Hunt further agrees after notice of the exercise of said option to execute and deliver a good and sufficient Warranty Deed to said premises, to the said Minford Local School District.

"It is further agreed by and between the parties that the said Minford Local School District may renew this option by giving notice of its intention to do so to said A. P. Hunt within thirty days prior to the date of the expiration of this option and at the same time shall pay an additional sum of $2,000.00 to said A. P. Hunt for and in consideration of the renewal, which renewal shall be until 12:00 Noon July 1, 1961. It is expressly agreed by and between the parties hereto that if the said Minford Local School District fails to exercise this option as hereinabove set forth that the monies paid to the said A. P. Hunt for and in consideration of said option shall be forfeited by the said Minford Local School District in favor of the said A. P. Hunt.

"It is further agreed by and between the parties that said Minford Local School District may renew this said option for an additional 3rd year, 4th year and 5th year, respectively, upon the same terms and conditions as set forth in the immediate paragraph preceding; that said renewals for the 3rd, 4th and 5th years shall be for periods of one year under the same terms

and conditions, including the payment of the sum of $2,000.00 for each respective renewal. It is expressly agreed by and between the parties that at whatever time during this option or its renewal that all sums paid in consideration of said option shall be applied against the total purchase price, also it is expressly understood and agreed that in the event and by a failure to renew said option at any time during the existence of said option, or the renewal thereof or a failure to exercise said option, the sums paid in consideration thereof shall be forfeited by said Minford Local School District in favor of the said A. P. Hunt.

"* * * Lease Agreement Follows: * * *

"It is further understood and agreed that the purchase price herein paid is apportioned as follows:

"$1,000.00 for each of lots No. 4, 5, 6, 7, 8 and 9, and the balance of the purchase price apportioned to the unplatted land above described."

Stipulations No. 2 and No. 3 are also important. They read as follows:

"2. It is further stipulated and agreed that the complete option agreement as set out in Stipulation 1, containing the Lease Agreement not set out in Stipulation 1, appears of record in Mortgage Book 355, Page 468 of the Record of Mortgages of Scioto County, Ohio, and that said Lease Agreement therein recorded provides for the rental of a portion of the real estate described in said option, which said rentals are specifically not allocated to the purchase price of the premises described in said option, and it is further stipulated that said option, recorded as aforesaid, does not contain any certificate of the fiscal officer in respect to the appropriation of necessary funds for the performance of said option agreement.

"3. Pursuant to the agreement in Stipulation 1, the Board of Education of the Minford Local School District has made payments of $1,000.0 in July, 1959, $2,000.00 in July, 1960, and $2,000.00 in July, 1961, and that said payments were made pursuant to the certification of the fiscal officer as to the availability of funds to the extent of said payments, and that said certificates were duly attached to said agreement."

Plaintiff attacks the validity of the agreement as being unauthorized by the statutes governing School Boards, pri-

marily on the ground that the agreement was a contract to purchase real estate on an installment basis, also, because of failure of the Board to comply with Section 5705.41, Revised Code, requiring the fiscal officer to certify as to the availability of funds for such contract. Plaintiff also claims in his memorandum that, even though, the agreement is found to be an option rather than a purchase contract that it is still unauthorized and therefore void.

The parties in their stipulation, have agreed that the first question to be answered by this court is:

"A. Is the agreement set forth above an installment contract for the purchase of real estate with the total purchase price payable over a period of five years, as alleged by the plaintiff, or is the agreement an option to purchase real estate within a specified time with the right to renew at stated intervals, as alleged by the defendant?"

In answering this question we must first consider what an option is and how it differs from a contract. Quoting Ohio Jurisprudence (2d), Contracts, Volume 11 P. 25, Page 268:

"*A proposal made to be accepted within a specified time constitutes what is sometimes referred to as a continuing offer; and a continuing offer upon a sufficient consideration is usually termed an 'Option.'*"

Further quoting from the same paragraph, Page 269 and 270:

"An option is a unilateral contract since it binds one side without binding the other; and the binding effect of an option given for a consideration does not depend upon mutuality. So, it prevents the party who signs it from disposing of the property under consideration until its expiration. But the party having the option is of course not bound to exercise it; he can withdraw from it at any time prior to the exercise thereof."

Quoting further from Volume 11, Ohio Jurisprudence (2d), P. 34, Page 279:

"An option becomes effective as a contract upon acceptance thereof."

The law pertaining to contracts and options is too fundamental to require further citations of authorities. We need only read the agreement in question to determine that the

Board of Education did not bind itself to do anything by virtue thereof. The agreement is clearly nothing more than an offer made by A. P. Hunt to said Board of Education to sell said property within a certain time at a certain price for a consideration, which offer would require an acceptance by the Board of Education before it would or could be bound thereby. The quite common provision that the amount of consideration paid for the option should be applied toward the purchase price if and when the offer was accepted could not change the nature of the agreement or make it anything more than an offer requiring an acceptance before the Board of Education could become bound thereby.

Our answer therefor is that the agreement was not a contract to purchase real estate but was an option to purchase real estate with the right to renew at stated intervals.

The second question submitted by the pleadings and stipulations is:

"B. If the Court finds the same to be an option as alleged by the defendant, does the Board of Education have the authority to make an option?"

In determining the answer to this question, we must first refer to the statutes governing Boards of Education. Section 3313.17, Revised Code, provides as follows:

"The board of education of each school district shall be a body politic and corporate, and, as such, capable of suing and being sued, contracting and being contracted with, acquiring, holding, possessing, and disposing of real and personal property, and taking and holding in trust for the use and benefit of such district, any grant or devise of land and any donation or bequest of money or other personal property."

Section 3313.37, Revised Code, as it existed at the time of this agreement read as follows:

"The board of education of any school district, except a county school district, may build, enlarge, repair, and furnish the necessary schoolhouses, purchase or lease sites therefor, or rights of way thereto, or purchase or lease real estate to be used as playgrounds for children or rent suitable schoolrooms, either within or without the district, and provide the necessary apparatus and make all other necessary provisions for the schools under its control"

With respect to the authority of Boards of Education, we quote from 48 Ohio Jurisprudence (2d), Page 481, Sec. 78, as follows:

"Boards of education in Ohio are creatures of statute and their duties as well as their authority are clearly defined by the State legislation on the subject. Their authority or jurisdiction is derived solely from statute and is limited strictly to such powers as are clearly and expressly granted to them or are clearly implied and necessary for the execution of the powers expressly granted. They have special powers which are to be strictly construed, and which they cannot exceed; and since boards of education have only such authority as is conferred by law, when they take action outside of and against the plain provisions of the law, such action is absolutely void.

"The authority which the General Assembly has conferred on boards of education is, however, very sweeping in character, and it has even been said that under the present school laws boards of education are given almost unlimited powers. Thus, in addition to a variety of specific grants of power, the code provides that each city, exempted village, or local board of education shall have the management and control of all the public schools of whatever name or character in its respective district. Manifestly, therefore, such boards are given broad or extensive powers within their sphere of activity, which is the conduct and management of the public schools of their district, and they are administrative bodies with a broad discretion with regard to school matters and policy and the protection of the public school system. - - -"

I have been unable during my research to find any case in Ohio, and counsel have furnished me with none, which involves the right and power of a board of education to enter into an option to purchase real estate.

It has been held in many cases that boards of education and other similar governmental bodies, are limited in the exercise of their powers to such as are clearly and distinctly granted. *Verberg* v. *Board of Education,* 135 Ohio St., 246; *Clark* v. *Cook,* 103 Ohio St., 465. This is a broad statement, however, and must be construed in light of the facts in each case.

The Supreme Court of Ohio, however, in *Schwing* v. *McClure et al.*, 120 Ohio St., 335, relaxed this strict rule and adopted a more sensible and realistic rule which is stated in Syllabus No. 1 as follows:

"Members of a board of education of a school district are public officers, whose duties are prescribed by law. Their contractual powers are defined by the statutory limitations existing thereon, and they have no power except such as is expressly given, *or such as are necessarily implied from the powers that are expressly given.*" (Emphasis added.)

This same rule was previously stated in *American Surety Co.* v. *Raeder*, 15 CC 47 (affirmed without opinion, 61 Ohio St., 661), by the Circuit Court of Cuyahoga County in an action involving a contractors bond for the benefit of laborers and materialmen in connection with a contract of the Cleveland School Board in which the court said:

"Again, it is claimed that the Board was without authority to require or receive this bond, and, therefore, it is not binding on the surety; that the whole matter was ultra vires, so far as these laborers and material-men were concerned.

"The subject matter of the contract, was clearly within the jurisdiction of the Board and the contract one that the Board had ample authority to make, independent of any express provision of the statute. We are clearly of the opinion, that the Board, in a contract of this kind, could secure its performance in any proper manner, one of which would be to require a bond, as in this case.

"*The Board not only had the powers expressly granted it, but such as were by those expressly granted, implied and necessary for the carrying out of those that were expressly granted.*" (Emphasis added.)

The Court of Appeals of Cuyahoga County in *Harrison* v. *Board of Education*, 13 Ohio Opinions, 182 at 183 (28 Ohio Law Abs., 45), said:

"Counsel agree upon several well establishel legal propositions. Boards of Education are creatures of statute. Such Boards have only such powers as are expressly conferred. We add such implied powers as are reasonably necessary to effectuate expressed powers." *Board of Education* v. *Bright*, 109 Ohio St., 14; *Schwing* v. *McClure*, 120 Ohio St., 335.

Syllabus No. 1 in *Board of Education* v. *Ferguson*, Court of Appeals, Franklin County, 23 Ohio Opinions, 238 (35 Ohio Law Abs., 73), reads:

"The authority of Boards of Education is derived solely from the statutes and is limited strictly to such powers as are expressly granted or clearly implied."

We must conclude from these authorities that in an attempt to determine the powers of a board of education that we must go further than the strict interpretation of the words of the statute and must consider the implied powers necessary to carry out the expressed powers given by the legislature.

Section 3313.17, Revised Code, herein previously quoted in full specifically gives the boards of education power to acquire, hold, possess and dispose of real and personal property. Section 3313.37, Revised Code, as it existed at the time of this agreement, gave specific authority to build, enlarge, repair and furnish necessary school houses, purchase or lease sites therefor, or purchase or lease real estate to be used as playgrounds and make all other necessary provisions for the schools under its control.

There could be no possible doubt under these statutes that a board of education has authority to purchase real estate. Considering the broad powers that are given the boards of education by the statutes and the manner in which they are required to operate and the methods they have for obtaining money to purchase real estate or to construct buildings, what powers not specifically granted are implied in carrying out these powers?

The Attorney General of Ohio in Opinion No. 7225 rendered on October 8, 1956, held that:

"1. The authority of a board of education to acquire real property for school buildings sites, expressly given in Section 3313.17, Revised Code, necessarily implies the authority to pay, as a part of the cost of acquisition,. where a negotiated purchase is made, the expense of expert appraisal of the value of such property and the expense of a real estate broker's services if the board deems the services of such appraisal expert and of such broker to be advantageous to the board in effecting such purchase. Compensation for such services may be made on a commission basis, related to the value of the property

involved. (Opinion No. 3527, Opinions of the Attorney General for 1938, page 2495, overruled in part.)''

Again, in Opinion No. 1490 given on June 21, 1960, the Attorney General held that under Section 3313.37, Revised Code, a board of education in the exercise of its ''general powers'' if it deems fences desirable, may build and maintain fences on its property, yet express powers are not given nor fences mentioned therein.

Also, in Opinion No. 1304 given April 25, 1960, to the State Auditor, the Attorney General after quoting Section 3313.37, Revised Code, said:

''It may be seen that a board of education is authorized under the terms of this section to 'provide the necessary apparatus' for the operation of the schools under its control. While no particularized method for acquiring such necessary apparatus has been set forth in this section, it appears to be the obvious intent of the General Assembly to leave such methods to the discretion of the particular board of education. There is also no question but what ''necessary apparatus'' may be interpreted to include office equipment including mechanized bookkeeping machines. Such apparatus could then be acquired by a board of education by outright purchase or by leasing such equipment over a given period of time. Which method is more desirable is a question to be left to the local board of education for decision.''

Quite frequently many preliminary steps are necessary before the actual purchase of a tract of real estate is consummated. These preliminary steps are necessary to protect the purchasers' investment and to guarantee that a good title is obtained when the property is paid for. All of these preliminaries require time. While these preliminary steps are being carried on, the prospective purchaser must be protected in some manner by an assurance that when the preliminary steps are completed and he is ready to take title and pay the purchase price that the property will still be available and the owner willing to sell at the price originally agreed upon, otherwise, all the preliminary steps may have been in vain and at a great financial loss to the prospective purchaser. The instrument or the agreement by which the prospective purchaser is

protected is frequently an option. It is a common form of unilateral contract by which the purchaser by paying a certain consideration to the owner, obtains an agreement from the owner, that he, the purchaser, shall have the right to purchase certain property at a future time for a certain price if he elects to do so. Once the option is granted, the purchaser may then proceed with surveys, soil tests, water tests, arrangements for financing, title examinations and whatever other preliminary steps are necessary to the final determination by the buyer as to whether he will exercise his right of option. Is it reasonable to assume that the legislature intended to deprive a board of education from using such methods in protecting the public funds with which they are intrusted, as an individual or private corporation uses in their own day to day operation in protecting their own private funds: We think not. We think that the right to option land is an implied power granted to a board of education in carrying out the expressed power given to purchase or acquire land.

The usual method by which a board of education obtains money with which to purchase land or build buildings is by a bond issue. A bond issue requires time in preparation and passing of the preliminary resolution, holding an election, advertising and selling bonds if approved by the voters. Without an option, how would the board of education be assured that the land to be purchased from a bond issue would be available at the agreed price when all this was accomplished? Or assume that a contract of purchase was entered into by which the board became bound to purchase and then the voters rejected the bond issue and funds were not available to purchase the property. What then would be the predicament of the board?

We think the second question must definitely be answered in the affirmative, that is that a board of education does have the power under its general authority to purchase or acquire land, to enter into an option for land that it desires or intends to purchase, as one of the necessary steps toward consummation of the purchase of said real estate and in order to protect the funds and the duties with which it has been intrusted.

The third question is; has the Board of Education acted contrary to Section 5705.41, Revised Code? Section 5705.41, Revised Code, reads as follows:

"No subdivision or taxing unit shall:
" * * *                    * * * *                    * * *

"Make any contract or give any order involving the expenditure of money unless there is attached thereto a certificate of the fiscal officer of the subdivision that the amount required to meet the same, or in the case of a continuing contract to be performed in whole, or in part, in an ensuing fiscal year, the amount required to meet the same in the fiscal year in which the contract is made has been lawfully appropriated for such purpose and is in the treasury or in process of collection to the credit of an appropriate fund free from any previous encumbrances. * * *"

We have herein previously determined that the agreement was an option renewal by the board in its discretion by the payment of the necessary consideration. The only amount therefor that the board was liable for in any one year was the consideration paid for the renewal of the option. According to stipulation No. 3, payments for the years 1959, 1960 and 1961 were made pursuant to the certification of the fiscal officer as to the availability of funds to the extent of said payments. We determine that this was a compliance with the requirement of Section 5705.41, Revised Code, and is not contrary thereto.

An entry may be prepared accordingly, saving plaintiffs exceptions.